Jurgen HERBST et al.,
Plaintiffs-Appellants,

v.

FIRST FEDERAL SAVINGS AND LOAN
ASSOCIATION OF MADISON,
Defendant-Appellee.

No. 75–2109.

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1976.

Decided July 28, 1976.

James N. Youngerman, Madison, Wis.,
for plaintiffs-appellants.

Frank J. Bucaida, Madison, Wis., for de-
fendant-appellee.

**1280**

Before HASTINGS, Senior Circuit Judge, BAUER, Circuit Judge, and WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge.

This is an appeal from the District Court's judgments dismissing complaints for failure to state a cause of action. In stating the facts and the relevant statutory provisions we cannot improve on the clear, succinct, indisputable recital in Judge Doyle's opinion, upon which the following paragraphs are directly based.

Relying on § 130(a)(1) of the Truth in Lending Act, 15 U.S.C. § 1640(a)(1), and alleging jurisdiction under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337, different plaintiffs separately brought seven parallel actions against First Federal Savings and Loan Association of Madison.

Each complaint was filed on December 11, 1974. All seven complaints contain substantially similar allegations except for the identity of the plaintiffs. In each complaint the plaintiffs there named allege that they executed in favor of defendant a mortgage and mortgage note. In 74–C–478 the date was April 15, 1969; in 74–C–479, April 24, 1969; in 74–C–480, June 22, 1967; in 74–C–481, August 22, 1961; in 74–C–482, March 2, 1964; in 74–C–483, August 15, 1968; and in 74–C–484, February 27, 1969.

The notes provided for interest on the indebtedness at the rate of 7½% per annum in 74–C–478; 8% per annum in 74–C–479; 6¾% per annum in 74–C–480; 6½% per annum in 74–C–481; 6¼% per annum in 74–C–482; 7½% per annum in 74–C–483; and 7¼% per annum in 74–C–484. At no time before the execution of the mortgages and notes did defendant deliver or show to plaintiffs a disclosure form reflecting the terms of the loan. The mortgage notes, in accordance with permission granted by Wis. Stat. § 215.21, contained the following clause:

".   .   . The rate of interest stipulated herein may be increased at the option of the Association; provided, however, that the Association may not exercise such right in less than three years from the date of the loan, and then only upon at least four months' written notice to the borrower; and provided that in the event of such an increase in the stipulated rate of interest the borrower may prepay the loan within such notice period without penalty."

On various dates in September, 1973, plaintiffs received from defendant letters stating that as of February 1, 1974, the interest rate would be increased pursuant to the above clause to 8½% in 74–C–478; 8½% in 74–C–479; 7¾% in 74–C–480; 7½% in 74–C–481; 7¼% in 74–C–482; 8½% in 74–C–483; and 8¼% in 74–C–484. The interest rate was increased on February 1, 1974, to the rate specified in the notice, and that rate has remained in effect since that date. Defendant did not deliver or show to plaintiffs a disclosure form reflecting the terms of the loan at any time on or prior to February 1, 1974.

Section 130 of the Truth in Lending Act, 15 U.S.C. § 1640, makes liable in damages any creditor who fails to disclose certain information in connection with a consumer credit transaction. Subsection (e) of § 130, 15 U.S.C. § 1640(e) provides:

"Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

Section 129(a) of the Act, 15 U.S.C. § 1639(a), sets forth the information which a creditor is obliged to disclose. The timing of disclosure is controlled by subsection (b) of § 1639, which requires disclosure to be made "before the credit is extended" and permits it to be made "by disclosing the information in the note or other evidence of indebtedness to be signed by the obligor."

Both in the District Court and here defendant's position in these actions is: (1) that none of the provisions of the Truth in

* Senior District Judge Charles E. Wyzanski, Jr., of the United States District Court for the District of Massachusetts is sitting by designation.

Lending Act applies to any part of the transactions in question; (2) that, nevertheless, the disclosures actually made meet the requirements of the Act and regulations; and (3) that if defendant did have a duty to disclose under the Act and if it violated that duty, the violation occurred no later than September, 1973, and therefore none of these actions was filed within the one-year limit.

In his opinion, District Judge Doyle held that (1) the Act and the regulations applied to the transaction between defendant and each of the plaintiffs which began in September 1973, (2) defendant's failure to make disclosure at the time it invoked the variable rate provision in these cases did not constitute a violation of the statute or regulations, and (3) however, if defendant did have a statutory or other obligation to disclose, such obligation would have begun in September 1973 and continued at least through December 11, 1973, and that actions based on alleged breaches of such supposed obligations would not be barred by the limitation embodied in § 1640(e).

■ Because we conclude that the second of the aforesaid holdings is sound, and such conclusion makes moot the other two holdings, we do not find it necessary to do more than to cover, substantially in the same words used by the lower court, the second of its holdings.

No provision of the statute nor any provision of the regulation deals directly with the legal significance of a variable rate provision in a loan. Only the Federal Reserve Board interpretation embodied in 12 C.F.R. § 226.810 deals directly with the matter. It reads:

(a) In some cases a note, contract, or other instrument evidencing an obligation provides for prospective changes in the annual percentage rate or otherwise provides for prospective variation in the rate. The question arises as to what disclosures must be made under these circumstances when it is not known at the time of consummation of the transaction whether such change will occur or the date or amount of change.

(b) In such cases, the creditor shall make all disclosures on the basis of the rate in effect at the time of consummation of the transaction and shall also disclose the variable feature.

(c) If disclosure is made prior to the consummation of the transaction that the annual percentage rate is prospectively subject to change, the conditions under which such rate may be changed, and, if applicable, the maximum and minimum limits of such rate stipulated in the note, contract, or other instrument evidencing the obligation, such subsequent change in the annual percentage rate in accordance with the foregoing disclosures is a subsequent occurrence under § 226.6(g) and is not a new transaction.

12 C.F.R. § 226.6(g) reads as follows:

"(g) *Effect of subsequent occurrence.* If information disclosed in accordance with this part [that is, all of Regulation Z] is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part."[1]

Subsections (a) and (b) of § 226.810 give rise to no difficulty. They clearly contemplate an initial extension of credit such as a home mortgage loan which occurs on or after July 1, 1969 (for example, August 1, 1969) in which a certain annual percentage rate (for example, 7%) is agreed upon, but in which provision is made that at some later time the rate may be varied. Subsection (a) asks what disclosures must be made

---

1. There is a footnote to § 226.6(g) which reads:
Such acts, occurrences, or agreements include the failure of the customer to perform his obligations under the contract and such actions by the creditor as may be proper to protect his interests in such circumstances. Such failure may result in the liability of the customer to pay delinquency charges, collection costs, or expenses of the creditor for perfection or acquisition of any security interest or amounts advanced by the creditor on behalf of the customer in connection with insurance, repairs to or preservation of collateral.

before this initial extension of credit. Subsection (b) answers that the same disclosures must be made as those required in the absence of a variable rate provision, but that the existence of the variable rate provision must also be disclosed. Neither (a) nor (b) appears to be concerned with what disclosure, if any, need be made at that later time (for example, August 1, 1973) when the variable rate provision is invoked and the annual percentage rate is increased (for example, to 8%).

But subsection (c) is puzzling. Conceivably, it was intended to say that in the example, if the 7% annual percentage rate and the existence of the variable rate provision have been properly disclosed before August 1, 1969, then although the action increasing the annual percentage rate from 7% to 8% on August 1, 1973, renders inaccurate the disclosure made on August 1, 1969, this inaccuracy does not constitute a violation of Regulation Z. Conceivably, this proposition and only this proposition was intended to be expressed in subsection (c), and the draftsperson chose to express it by saying that the action on August 1, 1973, was the kind of "subsequent occurrence" under § 226.6(g) which renders the August 1, 1969, disclosure inaccurate but which nevertheless spares the inaccurate August 1, 1969 disclosure from being considered a violation of Regulation Z.

This contrivance is awkward because the foreseeable invocation of the variable rate provision seems quite dissimilar to the "subsequent occurrences" apparently contemplated by § 226.6(g), such as the unforeseeable failure of a borrower to perform and the unforeseeable measures which a creditor may then be compelled to take to protect the creditor's interests.

Despite the awkwardness of the reference to § 226.6(g), however, this view of all three subsections of § 226.810 would make sense. The interpretation embodied in § 226.810 would be limited to describing the disclosures which must be made before the initial extension of credit, on August 1, 1969, in the example, and to dealing with the legal significance of any apparent inac-

curacy in the August 1, 1969, disclosures which might arise on August 1, 1973, solely from the invocation of the variable rate provision. It would be silent on the question of what new disclosures, if any, need be made before the annual percentage rate is increased by invocation of the variable rate provision.

However, this view of § 226.810 is made possible only by ignoring the concluding words of subsection (c): . . . such subsequent change in the annual percentage rate in accordance with the foregoing disclosures . . . is not a new transaction." "[A] new transaction" must be considered words of art. They appear in § 226.810(j) headed "Refinancing, consolidating, or increasing," in the following context:

"If any existing extention of credit is refinanced, . . . such transaction shall be considered a new transaction subject to the disclosure requirements . . . ."

The implication is inescapable that if a transaction is not to be considered "a new transaction," it is not subject to the disclosure requirements. Despite the uncertainties and inconsistencies among various opinions expressed by the staff of the Federal Reserve Board and by the officers of the Federal Home Loan Bank Board, there is no dispute on this point. That is, taking into account §§ 226.6(g) and 226.8(j) of the regulations and § 226.810 of the interpretations, the "subsequent change in the annual percentage rate" is not "a new transaction" and does not require new disclosure, provided that the conditions stated in § 226.810 have been met.

In the present case, according to the complaint, when the initial extensions of credit were made, the first condition of § 226.810(c) appears to have been met: defendant disclosed that the rate of interest was prospectively subject to change and the conditions under which the rate might be changed. When the variable rate provision was invoked, the second condition of § 226.810(c) appears to have been met: the change in rate was in accordance with the

initial disclosure. Thus it appears that under § 226.810, there was no new transaction in 1973 and no new disclosures were required.

Three further contentions by the plaintiffs remain, however,

The first is that, in addition to the two conditions stated in § 226.810(c), the defendant must have met the conditions of § 226.810(b) (which incorporates the disclosure requirements of §§ 226.6 and 226.8(a), (b), and (d)) in order to avoid the disclosure requirements of a "new transaction" in 1973, and that the complaint alleges that the defendant has not met the conditions of § 226.810(b). This contention does violence to the language of § 226.710. Subsections (a) and (b) (which obviously contemplate an initial extension of credit on or after July 1, 1969) refer solely to the disclosures which must be made prior to the initial extension of credit in which a variable rate provision is included. Only subsection (c) is directed to the question whether the subsequent change in rate itself is a new transaction. Only subsection (c) defines the conditions which determine whether the subsequent change in rate is a new transaction. And subsection (c) embodies no reference, express or implied, to subsection (b), nor does it embody any reference, express or implied, to §§ 226.6 and 226.8(a), (b), and (d), with two possible exceptions discussed below. Moreover, limiting the conditions strictly to those stated in § 226.810(c) avoids an unreasonable result. It is true that in 1973 these plaintiffs would have benefitted from disclosures, but not from disclosures about the new chapter in their relationship with the defendant, nor from disclosures which might have been made earlier concerning aspects of a relationship which had become ancient history and of no further practical importance.

The second contention of the plaintiffs is that § 226.810(c) begins with the words "If disclosure is made prior to . . . ." and that "disclosure" must be construed to mean disclosure in the manner and form required by the statute and regulations. Our view, like the District Judge's is that the complaint alleges that at the times of the initial extensions of credit in these cases, the manner and form in which defendant disclosed the variable rate provision did not conform to the requirements set forth in the statute and regulations thereafter enacted and promulgated. However, a rule of substantial rather than strict compliance should be adopted, since defendant could not have been expected to foresee what the precise requirements might be as to manner and form. Applying this rule, we conclude that the manner and form of the disclosure alleged in the complaint constituted substantial compliance with the requirements subsequently enacted and promulgated.

The third contention of the plaintiffs is similar to the second. Section 226.810(c) provides in part: "If disclosure is made . . . that the annual percentage rate is . . . ." The term "annual percentage rate" is a term of art, defined subsequently to the times at which credit was extended to these plaintiffs by the defendant. The variable rate provision in the mortgage notes did not expressly state or refer to "the annual percentage rate" which was subject to change, but rather to "the rate of interest." Here again we apply a rule of substantial compliance, and conclude that there was substantial compliance in these cases.

We, therefore, like the District Judge, conclude that defendant's failure to make disclosures at the time it invoked the variable rate provision in these cases did not constitute a violation of the statute or regulations, and we affirm his judgment dismissing the complaint.

So ordered.