Jim DIXEY,* Plaintiff-Appellant,

v.

The IDAHO FIRST NATIONAL BANK, a national banking association, Defendant-Appellee,

and

Ramon MARTINEZ and Maria Martinez, Plaintiffs-Appellants,

v.

The IDAHO FIRST NATIONAL BANK, a national banking association, Defendant-Appellee.

Nos. 81–3099, 81–3168.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1982.

Decided May 18, 1982.

---

* Though appellant in No. 81–3099 spells his name "Dixie," the district court misspelled it as "Dixey," apparently because that is how appellant signed the loan agreement. We are "constrained to adhere to the erroneous spelling" because legal research techniques "are governed by the principle of consistency, not correctness." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 555 n.* (1980).

Roderick D. Gere, Idaho Legal Aid Services, R. Jonarde Raab, Boise, Idaho, for plaintiff-appellant.

Larry E. Prince, Langroise, Sullivan & Smylie, Boise, Idaho, for defendant-appellee.

Before KENNEDY, FARRIS and NORRIS, Circuit Judges.

KENNEDY, Circuit Judge:

Appellants contend the disclosures made by appellee, the Idaho First National Bank (the "Bank"), in connection with their loans failed to comply with the Truth in Lending Act (the "Act"), 15 U.S.C. § 1601 *et seq.* (1976) (amended 1980), and Federal Reserve Board Regulation Z, 12 C.F.R. Part 226 (1981), which implements the Act. The district court found that the Bank had committed three violations of the Act, but declined to award statutory damages for the

"technical violations." *Dixey v. Idaho First National Bank*, 505 F.Supp. 846 (D.Idaho 1981); *Martinez v. Idaho First National Bank*, 509 F.Supp. 773 (D. Idaho 1981). We determine that the district court erred in withholding the statutory penalty, and we reverse.

Appellee made loans to appellant Jim Dixey and appellants Ramon and Maria Martinez using the Bank's standard Sale and Loan Agreement. In two separate suits, Dixey and the Martinezes claimed the agreement violated the Act and Regulation in numerous respects. The district court found that the standard form contained three defects. First, the Bank violated the requirement of Regulation Z that "where the terms 'finance charge' and 'annual percentage rate' are required to be used, they shall be printed more conspicuously than other terminology required by this part...." 12 C.F.R. § 226.6(a) (1981). The Bank printed the terms, "Finance charge" and "Annual percentage rate," in bold face type, but also printed several other headings and disclosures in the same type, so that the two terms were not more conspicuous than other items. *Dixey*, 505 F.Supp. at 852.[1] Second, the Bank included in the agreement a notice regarding the consumer's limited right to cancel a home solicitation sale, which is not required by the Act. This additional information was not delineated from the required disclosures as specified in Regulation Z, 12 C.F.R. § 226.6(c) (1981). The purpose of the rule is to call attention to the required information. 505 F.Supp. at 852–53. Third, the Bank placed the required prepayment penalty charge and delinquency charge disclosures on the back of the agreement. The customer's signature appeared on the front. Under 12 C.F.R. § 226.8(a) (1981), disclosures must be made on the same side of the page as, and above, the place for the customer's signature.[2]

---

1. The district court found the same three defects in *Martinez* as in *Dixey*, and in its opinion adopted the discussion in *Dixey*. *Martinez*, 509 F.Supp. at 774–75, 781.

2. An Official Federal Reserve Board Interpretation, 12 C.F.R. § 226.801 (1981), permits placing certain disclosures on the reverse side if both sides contain a notice referring the reader to the other side and if the customer's signa-

Although it found that the Bank had failed to satisfy the Act and Regulation Z in the above three respects, the district court characterized the discrepancies as "technical defects," 505 F.Supp. at 848, and "minor, technical violations," *id.* at 857. Relying upon its power in equity, the trial court decided that because there was no evidence in the record that appellants had been misled or confused by the flaws, the damage provisions of the Act should not avail the consumer in this particular case, and it granted summary judgment for the Bank. *Id.* at 857–58; 509 F.Supp. at 781–82. On appeal, the Bank neither disputes the finding that it committed three violations of the Act nor contends that it has any statutory defense.

Section 130 of the Act mandates civil penalties as follows: a creditor who fails to comply with any requirement of the Act "with respect to any person is liable to such person in an amount equal to the sum of" actual damages sustained plus twice the amount of any finance charge in connection with the transaction, provided the doubled charge "shall not be less than $100 nor greater than $1,000." 15 U.S.C. § 1640(a) (1976) (amended 1980). Some courts have interpreted this provision as requiring strict compliance with the disclosures and terminology dictated by the Act, and have awarded the statutory penalty for all violations of the Act, however technical. *E.g., Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 416–17 (7th Cir. 1980); *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 443 (3d Cir. 1979); *Pennino v. Morris Kirschman & Co.*, 526 F.2d 367, 370 (5th Cir. 1976); *Grant v. Imperial Motors*, 539 F.2d 506, 510–11 (5th Cir. 1976). As the district court observed, though, other courts either have excused de minimus violations of the Act or have decided that technical deviations did not violate the Act. *E.g., Dixon v. D. H. Holmes Co.*, 566 F.2d 571 (5th Cir. 1978) (per curiam); *Herbst v. First Federal Savings and Loan Association*, 538 F.2d 1279 (7th Cir. 1976); *Bussey v. Georgia BankAmericard*, 516 F.2d 452 (5th Cir. 1975) (per curiam); *see* discussion and other cases cited *infra*, at 752. We need not decide whether this circuit would award damages for any violation, however minor, because the first violation found by the district court was not de minimus and entitles appellants to the statutory penalty.

■ The Truth in Lending Act was passed to achieve "the informed use of credit," which "results from an awareness of the costs thereof by consumers." 15 U.S.C. § 1601 (1976). The Act requires disclosure of credit terms to consumers so that potential borrowers will be able to compare the available costs of credit. *Id.; see Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219–20, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981); *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 363–66, 93 S.Ct. 1652, 1657–59, 36 L.Ed.2d 318 (1973). The most important disclosures mandated by the Act are those upon which consumers should compare competing loans, the finance charge and annual percentage rate. As the Supreme Court has recognized, "the Federal Reserve has adopted what may be termed a 'bottom-line' approach: that the most important information in a credit purchase is that which explains differing net charges and rates." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 569, 100 S.Ct. 790, 798, 63 L.Ed.2d 22 (1980). Regulation Z, which the Federal Reserve Board drafted to specify disclosures helpful to informed borrowing, reflects the Act's concern with the cost of credit by requiring the annual percentage rate and finance charge to be printed more conspicuously than other terms. 12 C.F.R. § 226.6(a) (1981). The rule facilitates comparison shopping for credit and stresses the cost of credit for the consumer.

■ The Bank failed to give required emphasis to these factors. "Finance charge" and "Annual percentage rate" are

---

ture appears "following the full content of the document." The district court was uncertain whether this permitted the signature to appear on the front as long as the reader was referred to the back for important information, but apparently concluded there was a technical defect. 505 F.Supp. at 853–54.

printed in lower and upper case letters approximately the same size as the other printed items in the Agreement. Though the two terms are in boldface type, numerous other headings on the page also are in boldface type. The cost terms are not more conspicuous than the many other disclosures on the printed agreement, and would not particularly catch the borrower's attention. We disagree with the district court's characterization of this defect as "technical." The violation is more serious than those excused as de minimus by some courts, whose decisions the district court relied upon for its reasoning.

Courts that have excused technical violations generally dealt with minor variations in terminology. In *Bussey v. Georgia Bank-Americard, supra*, for example, the court adopted the trial court's findings that the additions of such terms as "periodic," "cash advance," "total," and "monthly" to the required terms "finance charge" and "periodic rate" did not violate the Act. The court also considered the offsetting of the finance charge and annual percentage rate on a yellow background, which contrasted with a blue background for all other disclosures, and found that it complied with the emphasis requirement, even though other portions of the finance charge also were given stress. 516 F.2d at 454–55. In *Dixon v. D. H. Holmes Co., supra*, the Fifth Circuit again adopted the decision of a district court which excused the omission of the term "of cash price" after the term "unpaid balance," where it was obvious from the adjacent terms that the term referred to cash price. The district court had said: "The Truth in Lending Act requires truth in lending, but it's not an act that requires sacrament in language. It does not require the use of shibboleths or other sacred terms." 566 F.2d at 571. Similarly, in *Herbst v. First Federal Savings and Loan Association, supra*, the court applied "a rule of substantial compliance" to excuse, among other things, the use of "rate of interest" instead of the required "annual percentage rate." 538 F.2d at 1283.

A district court excused a truly de minimus violation, the use of "total payments of" instead of "total of payments," in *Glover v. Doe Valley Development Corp.*, 408 F.Supp. 699, 703 (W.D.Ky.1975), yet it so ruled only after considering whether the difference in terminology would confuse the consumer or inhibit comparison shopping for credit. Other cases have resolved similar minor matters. *See, e.g., Mims v. Dixie Finance Corp.*, 426 F.Supp. 627, 639 (N.D. Ga.1976) (use of "TOTAL FINANCE CHARGE" rather than "Total FINANCE CHARGE" excused); *George v. General Finance Corp.*, 414 F.Supp. 33, 35–36 (E.D.La. 1976) (no recovery for failure to identify $2.75 in official fees, which were fully disclosed, as part of the finance charge, under "venerable and sensible principle" of "De minimus non curat lex"); *Andrucci v. Gimbel Brothers, Inc.*, 365 F.Supp. 1240, 1244 (W.D.Pa.1973), aff'd mem., 505 F.2d 729 (3d Cir. 1974) (no need to disclose de minimus inconsistency between federal law, which permitted a $.50 minimum charge, and state law, which permitted a $.70 charge).

As the facts of the above cases demonstrate, to find statutory penalties warranted here we need not go to the extreme of awarding liability for all technical violations of the Act and Regulation Z, as some courts have done, *see* cases cited *supra*, at 751. Those courts have imposed liability for violations far less serious than the defect here. *See, e.g., Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d at 416–17 (finding liability for technical violation of using "AMOUNT OF NOTE INCL. CHGS. (TOTAL PMTS.)" instead of "total of payments"); *Grant v. Imperial Motors*, 539 F.2d at 510 (failure to include in finance charge $16.00 in official fees that were disclosed, but not itemized); *Pennino v. Morris Kirschman & Co.*, 526 F.2d at 370 (liability for use of "balance" instead of "new balance").

This circuit has yet to consider a case involving a truly de minimus deviation in terminology, and we leave open the question whether a violation less serious than that addressed here would warrant liability. *But cf. Kessler v. Associates Financial Services Co.*, 573 F.2d 577, 578 (9th Cir. 1977)

("We share the district court's concerns that the vagaries of the construction of TILA and Regulation Z can be traps for even wary lenders.... As real as those concerns are, however, redress lies with Congress and the Federal Reserve Board, not with the courts.").

We might have been more receptive to the district court's approach had the Act not been amended by the Truth-In-Lending Simplification and Reform Act of 1980, Pub.L.No. 96–221, tit. VI, 94 Stat. 132, 168 (1980), which, as the name suggests, was passed to simplify the information provided to consumers and to limit creditor civil liability to significant violations. S.Rep.No. 368, 96th Cong., 2d Sess. 17, *reprinted in* [1980] U.S.Code Cong. & Ad.News 236, 252. The new civil liability provisions of the Act impose penalties for violating only those disclosures which are "of material importance in credit shopping," and not various "technical" violations. *See id.* at 31, [1980] U.S.Code Cong. & Ad.News at 267; Boyd, *The Truth-In-Lending Simplification and Reform Act—A Much-Needed Revision Whose Time has Finally Come—Part II*, 23 Ariz.L.Rev. 549, 567 (1981). Suits to impose penalties for minor violations may no longer arise, as the amendments became fully effective on April 1, 1982. It should be noted, however, that under the amended Act, the finance charge and annual percentage rate are among the material terms affecting credit shopping and protected by civil liability. *Id.* More importantly, the amendments also incorporate the requirement that the "annual percentage rate" and "finance charge" be more conspicuous in section 122(a) of the Act, 15 U.S.C. § 1632(a) (Supp. IV 1980).

The parties shall bear their own costs on appeal.

REVERSED and REMANDED.

KENNEDY, Circuit Judge, concurring:

In view of the concerns expressed in the district court's opinions in these two cases, the following additional remarks seem appropriate, though to my colleagues they appear to be unnecessary to the disposition of the appeals and thus must be stated separately.

The judiciary must not be used as a mechanical device for enforcing sanctions when no real harm has been done to a cognizable legal interest. If a violation is de minimus, to insist that statutory penalties be awarded may contravene the constitutional rule that our jurisdiction is limited to a case or controversy. U.S.Const. art. III, § 2. *See Montoya v. Postal Credit Union*, 630 F.2d 745, 748–49 (10th Cir. 1980). In this regard, I fully share the concerns expressed by the district court. The instant case does not reach such a point, because the failure to comply with the regulation can impede comparison shopping. *Cf. id.* (enforcement of elements affecting comparison shopping may raise justiciable controversy).

I also recognize the district court's frustration in having to address the nine alleged violations of the Act, some of which appellants have conceded were de minimus and overly technical. The amount of attorney's fees to be awarded under section 130 of the Act, 15 U.S.C. § 1640(a)(3) (1976) (amended 1980), is determined in the same manner as with similar statutory grants, by considering the general twelve factors discussed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 71 (9th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). *Kessler v. Associates Financial Services Co.*, 639 F.2d 498, 499–500 (9th Cir. 1981); *see Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978); *McGowan v. Credit Center of North Jackson, Inc.*, 546 F.2d 73, 77 (5th Cir. 1977). Among the factors to be considered are the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, the amount involved, and the results obtained. *Kessler*, 639 F.2d at 500 n.1. The nature and importance of the disclosure violations litigated in these suits thus may enter into the trial court's computation of attorney's fees on remand. *Cf. Mirabal v. General Motors Acceptance Corp.*, 576 F.2d 729, 730 (7th Cir.), *cert.*

*denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978) (upholding as adequate attorney's fee award of $2,000 in case under Act granting $2,000 in statutory damages; "[t]o grant attorney's fees greatly in excess of a client's recovery requires strong support from the circumstances of the particular case").