Ronnie E. BROWN and Edith M. Brown, Plaintiffs-Appellees,

v.

MARQUETTE SAVINGS AND LOAN ASSOCIATION, Defendant-Appellant.

No. 81–2529.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1982.

Decided Aug. 18, 1982.*

As Amended Oct. 18, 1982.

---

* Pursuant to Circuit Rule 16, this opinion has been circulated among all the judges of this court in regular active service because it overrules in part the prior decision of this court in

*Mirabal v. General Motors Acceptance Corp.,* 537 F:2d 871 (7th Cir. 1976). No judge requested a hearing *en banc.*

Michael L. Sorgi, Schoendorf & Sorgi, Milwaukee, Wis., for defendant-appellant.

James N. Youngerman, Montie & Youngerman, Madison, Wis., for plaintiffs-appellees.

Before PELL, Circuit Judge, KASHIWA,** Judge, and ESCHBACH, Circuit Judge.

PELL, Circuit Judge.

This is an appeal from the district court's grant of summary judgment in favor of the plaintiffs-appellees, Ronnie and Edith Brown. The district court held, on stipulated facts, that the defendant, Marquette Savings and Loan Association (Marquette), had not complied with the requirements of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–67e (1976 & Supp. IV 1980), and the Federal Reserve Board regulations issued pursuant thereto, collectively known as Regulation Z, 12 C.F.R. §§ 226.1–80 (1982). The appeal poses two questions: (1) whether the district court erred in treating mortgage interest rate increases, implemented pursuant to the variable rate provisions of the mortgage note, as new transactions requiring Truth in Lending (TIL) disclosures; and (2) whether the district court erred in determining that each of the joint-obligor plaintiffs was entitled to the statutory penalty for each disclosure violation.

** The Honorable Shiro Kashiwa, Judge of the United States Court of Claims, is sitting by designation.

## I.

On December 5, 1972, the plaintiffs and the defendant entered a mortgage loan agreement, evidenced by a mortgage and a mortgage note. The original mortgage note provided for an interest rate of seven percent per annum, and imposed a prepayment penalty of ninety days interest on prepayment to the extent it exceeded twenty percent of the original amount of the loan. The note also contained an "adjustment of interest rate" clause, which permitted Marquette to decrease the interest rate, or after three years to increase the interest rate upon four months notice to the Browns. The clause permitted prepayment of the loan without penalty during the four month notice period.

The defendant also provided the plaintiffs with a TIL disclosure statement. That statement disclosed the original interest rate, expressed as an Annual Percentage Rate, the prepayment penalty, and the variable interest rate provision, without use of the term Annual Percentage Rate. It also failed to disclose the waiver of the prepayment penalty during the notice period.

The initial interest rate of seven percent remained in effect until August 30, 1979. In April 1979, Marquette notified the Browns that the interest rate would be raised to nine and one-quarter percent effective September 1, 1979. This raised the Browns' monthly mortgage payment from $247.52 to $301.37. In April 1980, Marquette mailed notice of another increase, to ten and one-quarter percent, effective September 1, 1980. This raised the Browns' mortgage payment from $301.37 to $324.81. Neither notice of increase used the term Annual Percentage Rate in disclosing the new interest rate, and neither mentioned the waiver of prepayment penalties during the notice period. No additional TIL disclosures accompanied either notice of increase.

The plaintiffs thereafter filed suit under the TILA, and both parties sought summary judgment. The court ruled that because

the original contract failed to specify "the maximum and minimum limits of future alterations in the interest rate," the increases in the interest rate constituted new transactions under Federal Reserve Board Interpretation 226.810(c) of Regulation Z, 12 C.F.R. § 226.810(c), and were therefore subject to section 226.8 of the Regulation, which requires new disclosures for such transactions. The court further found that the letters of April 1979 and 1980 giving notice of the interest increases failed to make the requisite disclosures, including the number of remaining payments, the method of computing default charges, and the description of the security interest involved. The court rejected the plaintiffs' contention that use of the term "interest rate" rather than "Annual Percentage Rate" in the variable interest rate section of the December 5, 1972 disclosure violated the Act, finding the statement in substantial compliance with the Act. The court further ruled that the plaintiffs were entitled to recover the statutory damages of $1,000 for each plaintiff, and for each episode, for a total of $4,000.

The defendants contend that the interest rate increases were not new transactions, but were mere "subsequent occurrences," implementing the original contract, and therefore did not require new disclosures under the provisions of the Act. They also challenge the court's damages award. We turn first to the question of liability.

## II.

We note as a preliminary matter the well-established rule that a judgment will be affirmed if the record supports it, even though the district court relied upon a wrong ground or gave a wrong reason for its decision. *Panter v. Marshall Field & Co.*, 646 F.2d 271, 281 (7th Cir. 1981), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631.

The threshold issue is whether the rate increase must be treated as a new transaction within the meaning of section 226.8(j) of Regulation Z, which would then require the issuance of new disclosures. Although

section 226.8(b)(8) of the Regulation now governs the relationship between the disclosure requirements and variable rate provisions, it deals only with transactions consummated on or after October 10, 1977. The only relevant authority in effect at the time of the December 5, 1972, transactions dealing with such provisions was Official Board Interpretation 226.810. That Interpretation provided:

(a) In some cases a note, contract, or other instrument evidencing an obligation provides for prospective changes in the annual percentage rate or otherwise provides for prospective variation in the rate. The question arises as to what disclosures must be made under these circumstances when it is not known at the time of consummation of the transaction whether such change will occur or the date or amount of change.

(b) In such cases, the creditor shall make all disclosures on the basis of the rate in effect at the time of consummation of the transaction and shall also disclose the variable feature.

(c) If disclosure is made prior to the consummation of the transaction that the annual percentage rate is prospectively subject to change, the conditions under which such rate may be changed, and, if applicable, the maximum and minimum limits of such rate stipulated in the note, contract, or other instrument evidencing the obligation, such subsequent change in the annual percentage rate in accordance with the foregoing disclosures is a subsequent occurrence under § 226.6(g) and is not a new transaction.

12 C.F.R. 226.801 (Rescinded October 10, 1977).

The Board has consistently relied on this interpretation as establishing that any rate increase pursuant to a variable rate provision constitutes a refinancing and thus a new transaction unless there has been compliance with the conditions of 226.810(c). [Transfer Binder, May, 1974–Dec., 1977] Cons.Cred. Guide (CCH) ¶ 31,137; [Transfer Binder, April, 1969–April, 1974] Cons.Cred. Guide (CCH) ¶¶ 31,068; 30,858; 30,713; 30,-

712; 30,695; 30,413; 30,345; 30,270. Such Interpretations and Opinions are entitled to substantial deference, and are dispositive "[u]nless demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 556, 100 S.Ct. 790, 792, 63 L.Ed.2d 22 (1980).

We are not persuaded that the Board Interpretation and subsequent Opinions based upon it are demonstrably irrational. The TILA is a disclosure statute whose fundamental purpose is to provide information to facilitate comparative credit shopping and thereby the informed use of credit by consumers. 15 U.S.C. § 1601 ("Findings and declaration of purpose"); *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1163 (7th Cir. 1974). Consumers are likely to be shopping for credit when there is an interest increase pursuant to a variable rate provision, particularly when, as here, any prepayment penalty is waived during the notice period prior to interest escalation. Thus considering such increases as refinancing or new extensions of credit comports with the purpose of the TILA. Furthermore, the economic reality of the rate increase situation is that the increase dramatically alters the borrower's financing obligation. That is clearly demonstrated in this case, where the Browns' mortgage obligation increased from the original $247.52 to $324.81 following the second increase. In light of this substantial alteration in the plaintiff's obligation, it is not irrational to treat the increase as a new transaction.

Marquette contends that implementation of the variable rate provision is an implementation, rather than a modification, of the contract and therefore is not an extension of credit. It further urges that under Board Interpretation 226.810(c) what controls the need for additional disclosure is not the nature of the transaction, but rather the adequacy of the original disclosures. This not only exceeds the statutory mandate, which limits regulation to "when credit is extended," but also extends liability for inadequate original disclosure far beyond the one-year limitations period of the Act. We disagree. As discussed above, Board interpretation of an increase as a new transaction is not demonstrably irrational, and the provision of the subsection (c) exception for occasions when full disclosure has already been made eliminates the need for redundant disclosures. We find, therefore, that the provisions of Official Interpretation 226.810 are applicable, and unless this transaction meets the criteria of the subsection (c) exception, it is a new transaction subject to the TIL disclosure requirements of section 226.8 of Regulation Z.

Subsection (c) provides that if there has been prior disclosure that the Annual Percentage Rate is subject to change, the conditions under which change may take place, and, if applicable, the maximum and minimum limits of the rate, any subsequent rate change is not a new transaction, but rather a "subsequent occurrence," not requiring disclosure. The district court held that Marquette's failure to disclose the maximum and minimum limits on changes in the interest rate subjected it to the requirements of section 226.8(j), but rejected the plaintiffs' contention that the use of the term interest rate for Annual Percentage Rate in the disclosure statement was a violation of the TILA. Rather, the court held that the variance in terminology constituted substantial compliance and therefore would not, independently, require new disclosures. While we are persuaded that the district court reached the right result, we are unable to agree with its reasoning on either issue.

Subsection (c) requires disclosure of minimum and maximum rates if applicable. The mortgage note specified no such limits, and we are not persuaded that the disclosure statement required the disclosure of extra-contractual state usury limits on interest rates. *See Herbst v. First Federal Savings & Loan Association*, No. 74–C–478, slip op. at 14 n.7 (W.D.Wis. Oct. 2, 1975), *aff'd*, 538 F.2d 1279 (7th Cir. 1976). Therefore, disclosure of the limits was not applicable, and we cannot uphold the district court's decision on that ground.

The district court relied on *Herbst*, 538 F.2d at 1283, for the proposition that use of the term interest rate rather than the statutorily mandated term Annual Percentage Rate, constituted substantial compliance

with the Act, and therefore satisfied the requisites of 226.810(c). The mortgage notes in *Herbst*, however, were executed prior to the effective date of the Act, and the basis of the court's ruling was that in such transitional cases, a defendant could not have been expected to foresee the precise formal dictates of the Act, and that a standard of substantial compliance was therefore appropriate. That rationale is inapplicable to the instant case, where the Act was in effect at the time the mortgage note was executed.

■ The proper standard of compliance with the TILA provisions in this circuit was enunciated at some length in *Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407 (7th Cir. 1980):

In view of the goal of standardized terminology to facilitate comparison shopping, many courts have held that the failure to use the required terminology results in a violation of TILA. It is not sufficient to attempt to comply with the spirit of TILA in order to avoid liability. Rather, strict compliance with the required disclosures and terminology is required. Many violations of TILA involve technical violations without egregious conduct of any kind on the part of the creditor. However, Congress did not intend that creditors should escape liability for merely technical violations. Thus, while it may be true, in some sense, as the creditors have argued, that the terminological violations here are inconsequential, the fact remains that they are violations. Any misgivings which creditors may have about the technical nature of the requirements should be addressed to

Congress or to the Federal Reserve Board, not to the courts.

*Id.* at 416 (footnote and citations omitted). We find that the defendant's failure to use the term Annual Percentage Rate in that portion of the December 5, 1972, disclosure statement relating to the variable rate provision, falls short of this standard of strict compliance. The improper terminology in the disclosure statement violates the requirements of 226.810(c). *See* Staff Opinion Letter [Transfer Binder May, 1974—Dec., 1977] Cons.Cred. Guide (CCH) ¶ 31,-373, and therefore the increases were new transactions within the meaning of section 226.8(j).

■ We further find that the December 5, 1972, disclosure statement was inadequate because it failed to disclose the waiver of prepayment penalty during the notice period preceding the interest increase. This prepayment right constitutes a "condition under which such rate may be changed," which would be highly material to a consumer shopping for credit.[1] Thus the failure to disclose it violates the requirements of subsection 226.810(c), and requires that subsequent rate increases be treated as new transactions. We turn therefore to determination whether the notices of rate increase sent in April of 1979 and 1980 complied with the disclosure requirements of Regulation Z.

■ The only notices the Browns received were letters informing them of rate increases. Even a cursory examination reveals they were deficient under Regulation Z in several particulars:

1. The waiver of prepayment penalty was mandated by state statute, Wis.Stat. § 215.21(3)(b), when the loan was executed, and therefore all state-chartered savings and loan institutions (S & L's) were required to give such a waiver. If all of the potential creditors from whom the plaintiffs could have sought credit were governed by that statute, disclosure of the waiver might not be mandated. See discussion of state usury laws, *supra.* Federally chartered S & L's were not, however, similarly required to waive prepayment penalties, 12 C.F.R. § 545.8-5(b) (1982), and therefore borrowers did have a choice vis-a-vis such provisions. While it

might be argued that no rational borrower would select the less favorable federal prepayment treatment, and that disclosure by the state chartered S & L would be meaningless, a borrower would not be aware of the more favorable state treatment unless it were disclosed, and comparison shopping between state and federal S & L's would be impaired. Furthermore, under the *Smith* standard of strict compliance, there is no question that this is a "condition under which such rate may be changed," under 226.810(c), and must therefore be disclosed.

(1) They fail to disclose the new rate in terms of an Annual Percentage Rate. § 226.8(b)(2).

(2) They fail to state the number of remaining monthly payments. § 226.8(b)(3).

(3) They fail to state the amount of or method of computing default or delinquency charges. § 226.8(b)(4).

(4) They fail to include a description or identification of the security interest. § 226.8(b)(5).

(5) They fail to disclose any prepayment penalty. § 226.8(b)(6).

(6) They fail to disclose the method used to compute any unearned portion of the finance charge. § 226.8(b)(7).

(7) They fail to disclose that the rate was subject to increase, and the conditions of such increase. § 226.8(b)(8).

(8) They fail to state the amount financed. § 226.8(d)(1).

We conclude, therefore, that the district court reached the correct result in granting summary judgment to the Browns on the basis that the 1979 and 1980 rate increases were new transactions, and that the defendants violated the Act by failing to accompany those new transactions with the requisite TIL disclosures.[2] We turn next to consider whether the district court correctly ruled that each of the plaintiffs, who were joint obligors, were entitled to a separate statutory penalty for each occurrence.

### III.

■ As an initial matter we note that the violation before us is a purely technical one, and that the plaintiffs do not claim that they were misled or suffered any actual damages as a result of the statutory violation. It is well settled, however, that a borrower need not have been so deceived to recover the statutory penalty. *See, e.g., Smith v. Chapman*, 614 F.2d 968, 971 (5th

Cir. 1980); *Dzadovsky v. Lyons Ford Sales, Inc.*, 593 F.2d 538, 539 (3d Cir. 1979).

Prior to the enactment of the Truth in Lending Simplification and Reform Act of 1980 (1980 Act), 94 Stat. 168 (1980), it was the law of this circuit that an award of the statutory penalty to each joint obligor was appropriate. *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 881–83 (7th Cir. 1976). The 1980 Act amended the statute, however, to limit recovery among joint obligors to a single penalty amount. 15 U.S.C. § 1640(d) (Supp. IV 1980). We are required, therefore, to assess the impact of the 1980 Act upon the *Mirabal* rule, and upon the proper result in this case.

In *Mirabal*, the court examined section 1640(a), the penalty provision of the TILA, and concluded that the statutory language "appear[ed] to indicate that Congress felt that the duty of the creditor ran to each obligor involved in a loan transaction and that for a failure to fulfill this duty each obligor could sue and recover." 537 F.2d at 881 (footnote omitted). While the court acknowledged that such an interpretation appeared to run counter to the legislative history of the Act, *id.* at n.19, it concluded that the language of the section did not foreclose multiple recovery, and that a single recovery interpretation would pose practical problems. It therefore held that joint recovery would be allowed, absent "more convincing evidence that Congress intended some other result." *Id.* at 883. The *Mirabal* holding, although in conformity with the rule in the Fifth Circuit, *see, e.g., Davis v. United Companies*, 551 F.2d 971 (5th Cir. 1977), was in conflict with decisions of the Fourth, Ninth, and Tenth Circuits, *see, e.g., Milhollin v. Ford Motor Credit Co.*, 588 F.2d 753 (9th Cir. 1978), *rev'd on other grounds*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); *Mason v. General Finance Corp.*, 542 F.2d 1226 (4th

---

**2.** The defendant suggests that under the 1980 amendments to the TILA, a mere reference to the provisions of the contract governing the variable rate provisions would be adequate. Even if we were to assume that the 1980 amendments applied, *see infra*, the December

5, 1972 disclosure statement failed to make such reference, and would therefore be inadequate in any event. Nor does the 1980 Act relieve the lender of the duty to use the proper terminology in regards to the Annual Percentage Rate.

Cir. 1976); *Hinkle v. Rock Springs National Bank*, 538 F.2d 295 (10th Cir. 1976), and several district courts, *see, e.g., Powers v. Sims & Levin Realtors*, 396 F.Supp. 12 (E.D. Va.1975), *rev'd in part on other grounds*, 542 F.2d 1216 (4th Cir. 1976); *In re Wilson*, 411 F.Supp. 751 (S.D.Ohio 1975); *St. Marie v. Southland Mobile Homes, Inc.*, 376 F.Supp. 996 (E.D.La.1974). There was thus a split in the circuits when the 1980 Act amended the statute by inserting the explicit limitation to a single recovery.

That amendment is, of course, subject to two dramatically opposed inferences. The first, urged by the defendant, is that the Act was intended to clarify the intended meaning of the original statute. The second, urged by the plaintiffs, is that the Congress intended to change the law, and that the previous statute therefore meant exactly the contrary of the amended provision. The use of subsequent legislation to infer the meaning of an act of Congress can be hazardous, but we are guided in the TIL area by a recent Supreme Court decision, *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981), which relied on the 1980 Act and regulations promulgated under it to construe the term "security interest," in the TILA.

The *Valencia* Court held that when the 1980 Act and regulations pursuant to it modified the language of the TILA without indication that the new statute was intended to change the law, the new language is persuasive authority of the proper construction of the original TILA. 452 U.S. at 215–17, 101 S.Ct. at 2271–72. In such circumstances, " 'subsequent legislation reflecting an interpretation of an earlier Act is entitled to great weight in determining the meaning of the earlier statute.' " *James v. Ford Motor Credit Co.*, 638 F.2d 147, 152 (10th Cir. 1980), *vacated in part on other grounds*, 453 U.S. 901, 101 S.Ct. 3134,

69 L.Ed.2d 988 (1981) (On Petition for Rehearing) (quoting *Regents of the University of California v. Bakke*, 438 U.S. 265, 349, 98 S.Ct. 2733, 2777, 57 L.Ed.2d 750 (1979) (Opinion of Brennan, White, Marshall & Blackmun, JJ., concurring in part, dissenting in part) (applying 1980 Act to construe § 1639(a)(10) of the TILA). The legislative history of the 1980 Act is silent as to the reason for the addition of section 1640(d). We turn, therefore, to general principles of statutory construction, and the state of the law at the time of enactment of the 1980 Act to seek guidance as to the Congressional purpose of the new section.

■ One method of interpreting the significance of subsequent amendments to a statute takes dispute or ambiguity, such as a split in the circuits, to be an indication that a subsequent amendment is intended to clarify, rather than change, the existing law. 2A Sutherland Statutory Construction § 49.11 at 265–66. We are persuaded by this principle, and by the absence of any indication of intent to change the law in the legislative history of the 1980 Act, that a change in the law was not intended by the addition of section 1640(d). We find rather that the amendment was intended to remove the dispute surrounding the interpretation of the section, and to clarify the original intent of the Congress in enacting the TILA. This is precisely the sort of "more convincing evidence" sought by the *Mirabal* court. We hold therefore that in light of the 1980 Act's addition of new subsection (d), only one recovery per violation was intended to be permitted under TILA section 1640(a). Our decision to the contrary in *Mirabal* is therefore overruled to the extent it is inconsistent with this holding.[3]

■ The district court also awarded a $1,000 penalty for each of the two occurrences violative of the Act. While the de-

---

**3.** We are aware that subsequent to the passage of the 1980 Act the Eighth Circuit, in *Andersen v. Farmers Bank*, 640 F.2d 1347, 1349 (8th Cir. 1981), followed *Mirabal* in concluding that multiple recoveries were indicated under the TILA, and that the Fifth Circuit, in *White v. World Finance, Inc.*, 653 F.2d 147, 152 (5th Cir. 1981), reaffirmed its similar holding in *Davis v. United Companies*, 551 F.2d 971 (5th Cir. 1977). *An-*

*dersen* concluded that the language of section 1640(a) unambiguously provided for multiple recoveries, and that further explication was therefore unnecessary. *White* simply followed *Davis* without independent analysis. Neither case, therefore, considered the impact of the 1980 Act.

We are unpersuaded by the *Andersen* court's holding that the language of 1640(a) is unam-

fendant did not raise this issue on appeal, we note that the district court's determination on this issue was in keeping with its ruling, affirmed above, that both of the letters notifying the Browns of interest increases were new transactions under Board Interpretation 226.810(c). A separate award for each occurrence was therefore appropriate. *See Dennis v. Handley*, 453 F.Supp. 833, 835 (N.D.Ala.1978).

In accordance with all the foregoing reasons, the district court decision is affirmed to the extent it imposed liability for each of the two failures to make the appropriate TIL disclosures upon interest increase. It is reversed insofar as it awarded each plaintiff the separate statutory recovery. The parties shall bear their respective costs of this appeal.

AFFIRMED IN PART; REVERSED IN PART.

---

biguous, *see, e.g., Andersen*, 640 F.2d at 1349–50 (Robinson, J., dissenting), and do not believe that *Mirabal* can be read as supporting that proposition. The *Mirabal* court pointed out that the language of 15 U.S.C. § 1631 (1976), the general disclosure requirements, could be read as limiting recovery to one obligor. Although the court went on to reject that implication, the persuasive force of this syntactic ambiguity is testified to not only by the opinions of the Fourth, Ninth, and Tenth Circuits, but also by *Mirabal's* own reference to legislative history and practical considerations for aid in construing the statute. We are similarly unpersuaded by the *White* court's blind adherence to the rule of *Davis*. We therefore reject the views of the Fifth and Eighth Circuits, which did not deal with the 1980 Act, in favor of our analysis outlined above.