Parklawn Manor, Inc., Appellee, v. The Jennings-Lawrence Co., Appellee; Parker Bros., Inc., et al., Appellants.

(No. 6809—Decided August 7, 1962.)

*Mr. George H. Chamblin* and *Mr. Gordon E. Williams*, for plaintiff-appellee.

*Messrs. Kincaid, Palmer & Randall*, for defendant-appellee.

*Messrs. DeVennish & Hague*, for appellant Parker Bros., Inc.

*Mr. Paul Tague* and *Mr. J. Paul McNamara*, for appellant Globe Indemnity Company.

Duffey, P. J.   This is an appeal on questions of law and fact based upon a cross-petition of the Globe Indemnity Company against Parklawn Manor, Inc.   The action is for reformation of a sanitary sewer contract.   Parklawn entered into separate contracts with Parker Bros., Inc., for the construction of storm sewers, sanitary sewers, and street paving in one of its subdivisions.   Globe was surety for Parker on the contract bonds.   Parker allegedly did not fulfill its contract obligations on the sanitary contract.   It was taken off the job by Parklawn, and the work was completed by another contractor.   Parklawn filed an action for damages for breach of that contract against

Parker, and an action against Globe as surety. The petition relies upon an alleged provision of the contract, identified as paragraph "30. Cancellation of Contract." The first defense of Parker alleges, in effect, that this paragraph of the contract was inserted as a result of a mutual mistake, and that the provision is, therefore, void. Globe's cross-petition also alleges that this paragraph 30, and the entire page 8 of the contract, were inserted by mutual mistake; that a different page 8 was, in fact, agreed upon, and prays for reformation of the contract.

The case was set for hearing in equity upon Globe's cross-petition. At the conclusion of the evidence submitted by Parker and Globe, Parklawn moved to dismiss the cross-petition of Globe and the first defense of Parker. The court sustained the motion. Globe and Parker appealed.

The case is not properly appealable on questions of law and fact since there was no fact determination by the trial court. However, no objection has been made. The entire trial record is before this court and extensive briefs have been filed. The result would not be affected by a reduction to an appeal on questions of law only. Therefore, this court will proceed to determine the case.

The sanitary contract involved, and all the similar construction contracts in evidence, contain two main divisions—general specifications and detailed or special specifications. General specifications contain provisions dealing with the general legal rights and relationship of the parties. Detailed specifications are more concerned with specific construction aspects.

The appellants' theory of this case is that they have established a prima facie case of mutual mistake consisting of the insertion into the sanitary contract of the wrong page 8 of the general specifications. On that proposition the contract as executed does not portray a meeting of the minds in that respect. Appellant Globe goes a step further and contends that the evidence also sufficiently establishes the actual meeting of the minds upon different provisions, and that those provisions actually agreed to are those contained on page 8 of the Parklawn storm sewer contract which, in turn, was derived from page 8 of a Norton Homes, Inc., sewer contract.

The record clearly establishes the following facts;

1. Jennings-Lawrence Company, an engineering firm, was hired by Parklawn as its civil engineer, and, among other matters, was specifically authorized to "prepare the contracts," *i. e.*, the Parklawn storm, sanitary, and paving contracts.

2. The usual method of Jennings-Lawrence in preparing general specifications in these contracts and in similar contracts for other clients was to assemble extra copies of previous contracts. These were obtained from leftover copies or by rerunning the stencils. Sometimes mistakes had occurred in this assembling process. A few had been found and corrected in contracts for other clients. It was admitted that other mistakes might have occurred of which the firm was not aware. (See testimony of the firm's secretary, Mary McKeown.)

3. General specifications of all sewer contracts, whether storm or sanitary, as prepared by Jennings-Lawrence for both Norton and Parklawn, are substantially the same.

4. The pages of the Parklawn sanitary and storm sewer contracts were prepared in the manner stated. So far as the general specifications of the Parklawn contracts were concerned, a new stencil was cut only for the preliminary or first page. The first page of the Parklawn sanitary contract is a new stencil but is taken word for word from page 1 of a contract previously prepared for another client, Norton Homes, Inc.,—even to the point of ending in the middle of the same sentence. Pages 2-3-5-6-7-9-10-11-12 and 12A are all taken directly from the Norton Homes *sewer* contract, and are either extra copies or reruns of the Norton stencil. Page 8 of the Parklawn *sanitary* contract was taken directly from the Norton Homes *street paving* contract and is either an extra copy or a rerun of the stencil.

An examination of the various contracts indicates the following:

PARKLAWN SANITARY CONTRACT

Various changes from the mimeograph copy were made in the *detailed* specifications. These included the voiding of a provision by the use of a rubber stamp, the X-ing out of some portions, and the inclusion of typewritten changes. See paragraphs 2.05, 2.11, 2.18, 6.10, and see page 19. No such changes appear in any of the portions of the general specifications.

154

Page 7 of the general specifications concludes with paragraph 37 ("Damages to Property"). This would appear on its face to be both a usual and important provision. However, it ends in mid-paragraph. There is no other property damage liability provision. The effect is that the contract contains no intelligible provision on this aspect.

Page 8 of the general specifications begins in mid-paragraph, and the first seven lines are unintelligible in the context of the contract.

Paragraph 29 on page 8 ("Final Acceptance") is coextensive with, and in complete duplication of, paragraph 45 on page 11.

Paragraph 30 on page 8 ("Cancellation of Contract") makes specific references to "Section 14." This reference is unintelligible and meaningless in the context of the contract. However, "Section 14" of the Norton *street* contract does tie in with the reference. There is also a reference to Norton Homes as the owner. Most importantly, paragraph 30, in operation and scope, is in direct conflict with paragraph 42 ("Breach of Contract—Surety Or Owner To Complete Work"). Despite the last portion of paragraph 49 concerning cumulative remedies, in our opinion the provisions of paragraphs 30 and 42 cannot be reconciled.

Paragraph 31 on page 8 ("Prices") would also seem to be a usual and very important provision, yet it ends in mid-paragraph and is unintelligible. However, the *subject matter* of paragraph 31 is fully covered by paragraph 43.

On page 9 the first five lines begin in mid-paragraph and are unintelligible.

PARKLAWN STORM CONTRACT

Various changes were also made in the storm contract just as in the sanitary sewer contract, *i. e.*, voiding, deletions, and additions. See detailed specifications—paragraphs 2.05—2.09—2.11—2.16—2.18—6.05 and 6.10.

Page 8 of the storm contract commences with seven lines which are a pickup in mid-paragraph from paragraph 37 ("Damage to Property") which starts on page 7.

Paragraph 38 on page 8 ("Estimated Quantities") is on its

face both a usual and significant provision. No comparable provision can be found in the Parklawn sanitary contract as executed.

Paragraph 39 ("Alteration or Modification") would also seem to be on its face a usual and significant provision. Again, no comparable provision can be found in the Parklawn sanitary contract as executed. This paragraph 39 ends in an incomplete provision which ties directly in with the first lines of page 9 and also with the first lines of page 9 in the *sanitary* contract.

Finally, it is an extra copy or a rerun of the stencil from the Norton Homes *sewer* contract.

To recapitulate, all the general specification provisions for the Parklawn storm contract came from the Norton sewer contract. All the provisions of the Parklawn sanitary contract, except page 8, came from the Norton sewer contract. Page 8 of the Parklawn sanitary contract came from the Norton *street paving* contract.

It is also interesting to note that the Parklawn pavement contract basically follows the Norton *sewer* contract, contains a voided provision by the use of a rubber stamp (see paragraph 47), and contains various typewritten deletions and additions.

It should be borne in mind that only the plaintiff's (cross-petitioner) evidence has been submitted since the case was decided on a motion at the conclusion of Globe's case. On the record before us, we make the following findings of fact:

1. Parklawn authorized Jennings-Lawrence to prepare the contracts. Jennings-Lawrence did prepare them, and Jennings-Lawrence's representative attended the closing. There is *no* evidence that Parklawn ever made any independent examination of the contracts. It seems inescapable on the record as it now stands that Parklawn relied solely upon Jennings-Lawrence as to the content of the contracts. Therefore, we determine that whatever Jennings-Lawrence intended the contract to be is what Parklawn intended the contract to be.

2. A mistake was made by Jennings-Lawrence in the process of preparing the contracts—specifically the inclusion of the wrong page 8. This determination is supported by (a) the evidence of the method of preparation (b) positive inability to reconcile the provisions (c) the methods of changing provisions

apparent in other portions of the contract (d) the negative factor of omitted provisions, *i. e.,* provisions as to damages to property, estimated quantities and alteration or modification. (See paragraphs 37-38-39 in the Parklawn storm contract.) There is no contra evidence of record by Parklawn that page 8, and specifically paragraph 30, was intended to be a part of the contract.

3. Jennings-Lawrence actually intended that page 8 of the Parklawn sanitary contract was to be a copy of page 8 from the Norton Homes *sewer* contract rather than the page 8 derived from the Norton *street* contract which in fact had been inserted. This is supported by the nature and circumstances of the mistake in the context of the contract prepared, and this evidence is corroborated by the testimony of Mr. Parker of Parker Brothers. He testified that at the closing he examined the Parklawn *storm* contract, that he asked the Jennings-Lawrence man (Al Harness) if the general specifications of the Parklawn *sewer* contract were the same as the storm contract, and that the reply was ''yes.''

Appellee has placed considerable emphasis on the fact that the contract was executed without a careful examination by Parker Brothers of its contents. This appears to suggest that negligence in signing the contract without careful examination results in a binding contract on the terms stated.

It is basic to contract law that there can be no contract without a meeting of the minds. A signature to a contract is evidence that the parties' minds met on the terms of the contract as executed. This evidence, however, or the inference to be drawn from the fact of execution, can be rebutted. The right to so rebut is the exact premise upon which equitable jurisdiction in reformation rests. Regardless of negligence, or failure to exercise care when entering into a contract, a party is entitled to show that there was no meeting of the minds, or that the meeting was on different terms. In the present case it may be observed that whatever fault existed on the part of Parker, there was also apparently some fault by Jennings-Lawrence in the preparation of the contract, and by Parklawn in signing the contract just as ''blindly'' as did Parker  The placement of responsibility for, and the manner of preparation of, the con-

tracts is worthy of much discussion. However, this court is concerned only with the merits of the transaction and not with the business practices or professional issues.

Viewing the case *de novo* and bearing in mind it is presently here on questions of law and fact, we find there is sufficient evidence to establish, prima facie, a mutual mistake and to show in addition a meeting of the minds upon a different contract provision, *i. e.*, the contents of page 8 of the Parklawn storm (or Norton sewer) contract.

However, it would be unfair to grant a final judgment for reformation without giving Parklawn the opportunity to present evidence on its side of the case. The cause is, therefore, reversed and remanded with instructions to proceed with the trial.

*Judgment reversed and cause remanded.*

BRYANT, J., concurs.

DUFFY, J., concurring in part. This is an appeal from a decision of the Court of Common Pleas of Franklin County, Ohio, sustaining a motion to dismiss a cross-petition and one of the defenses alleged in the answer. A defendant-appellant sought to have a reformation of certain specifications of a contract between the other defendant-appellant and the plaintiff-appellee. The defendant who sought the reformation of the contract was the surety who executed a bond in connection with a contract for the construction of a sewer in the plaintiff's housing project.

The trial court did not feel that there was sufficient evidence to warrant a reformation of the specifications. Although it was indicated that somebody had made a mistake because of the incoherent and inconsistent provisions in the specifications, there was no clear and convincing evidence of what the parties intended should be in the specifications.

This was an appeal on questions of law and fact, and the evidence offered in the trial court was stipulated to be the evidence for presentation in this court. After a review of the stip-

ulated evidence, we think it is clear that the parties did not desire the incomplete paragraphs found on pages 7, 8 and 9 of the sanitary sewer improvement specifications, but, from the evidence, these specifications were not drawn after an agreement between the parties but were left to the engineering firm, The Jennings-Lawrence Co., defendant-appellee. The evidence is not clear that they did not intend to put section 30, from page 8, into the specifications, nor is it clear that they intended those sections found on page 8 of the Norton Homes contract to be included in these specifications. While the reformation of the specifications asked for would complete the paragraphs on pages 7 and 9 of the specifications as they now exist and would remove the inconsistency which now exists between section 30 on page 8 and section 42 on page 9, the evidence presented through the employees of the engineering firm does not indicate that section 30 was an undesired paragraph in the specifications. Its inconsistency with section 42 is not adequately explained and its enforceability remains doubtful.

In view of the fact that there is an absence of clear and convincing proof indicating what the exact terms of the contract were in the minds of the parties to the contract, I believe that the reformation was properly denied, and the motion to dismiss the cross-petition of Globe Indemnity Company sustained, but it does not follow that the first defense of the amended answer of Parker Bros., Inc., cannot be proved and that part of the motion should be overruled. The case should be returned to the trial court for further proceedings.