Ralph E. HUGHES, et al., Plaintiffs,

v.

CARDINAL FEDERAL SAVINGS & LOAN ASSOCIATION, Defendant.

No. C–1–82–201.

United States District Court,
S.D. Ohio, W.D.

July 1, 1983.

James B. Helmer, Jr., Kohn & Helmer, Timothy L. Bouscaren, Cincinnati, Ohio, for Ralph E. Hughes, Stephan D. Crain, Martha J. Crain, Joseph F. Neidich, Jr., and Pamela L. Neidich.

Lawrence R. Fisse, Batavia, Ohio, for T. David and Susan M. Burgess, Terry L. and Sharon F. Harvey.

Harold G. Korbee, Cincinnati, Ohio, for defendant.

## OPINION AND ORDER ON PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

SPIEGEL, District Judge:

This matter is before the Court for consideration of cross-motions for summary judgment (docs. 55, 58), supporting and opposing memoranda (docs. 67, 71, 77, 82, 91, 94), affidavits and depositions filed in support of and against such motions (docs. 81, 88, 89), as well as the arguments of counsel made at the hearing before the Court on May 5, 1983. For the reasons set forth below, it is the conclusion of the Court that defendant's motion should be granted in part and denied in part, and plaintiffs' motion should be granted in part and denied in part.

This class action complaint was filed against defendant Cardinal Federal Savings & Loan Association (Cardinal) on February 26, 1982. Plaintiffs are persons who entered into consumer credit transactions for home financing with Buckeye Savings Association, defendant's predecessor in interest during 1977. Plaintiffs allege violations of the Federal Truth-in-Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.*, due to Buckeye's failure to make certain disclosures required by law at the time plaintiffs' loans were closed and also at the time that Cardinal notified plaintiffs that the interest rate on their loans was being increased. Plaintiffs also allege breach of contract based upon language found in some of the contracts

that states defendant must decrease the interest rate on the loans as the cost of money increases. Defendant never decreased the interest rate on any loans; rates have increased on all loans since 1981. On January 27, 1983, this Court entered an Order certifying the action as a class action.

There is no dispute about most of the essential facts. At the time that plaintiffs obtained their loans with Buckeye, they all signed a promissory note and a mortgage on their homes. The notes executed by each plaintiff provided for interest at a fixed rate. Plaintiffs also executed variable interest rate mortgage loan modification agreements (loan modification agreement). The loan modification agreements provided that the interest rate on the loans could be varied in accordance with certain terms set forth therein. The majority of the modification agreements provided that the interest rate on the loans could be increased after twelve months in accordance with the "cost of money." A minority of the loan modification agreements provided that Buckeye was required to decrease the interest rate as the "cost of money" increased. Plaintiffs who signed loan modification agreements with such language have been certified as a sub-class.

Disclosure forms prepared by Buckeye at the time of the loan closings stated the annual percentage rate in fixed terms only and did not disclose any specific information regarding the variable interest rate. The majority of the disclosure forms contained the following language typed onto a space provided for "miscellaneous disclosure or explanations, if any":

VARIABLE INTEREST RATE: Interest rate and monthly payment may be modified in accordance with modification agreement attached.

The Court also is aware of at least one disclosure statement which contains the word "none" in the space provided to indicate any variation in interest rate. There is a factual dispute over whether plaintiffs received copies of these disclosure forms.

The attached loan modification agreements set forth the terms of the variable interest rate in the body of the agreement, but no specific Truth-in-Lending disclosure statement briefly explaining the terms of the variable interest rate was provided. According to defendant, however, brochures explaining the variable interest rate were given to plaintiffs at the time of the loan closings.

Beginning October 10, 1977, Buckeye also had its borrowers sign, in addition to the loan modification agreements, an "Addendum Federal Truth-in-Lending statement" (Addendum). This document provided an example of the effect of an increase in the interest rate of one-quarter of one percent on the borrower's monthly payment. This Addendum was provided to conform with the amendment to Regulation Z, effective October 10, 1977. This Addendum was signed by 103 of the 968 class members.

Effective May 31, 1978, Buckeye Savings Association merged with Cardinal. Upon the merger, by operation of law, all of Buckeye's rights, assets, and liabilities became those of Cardinal. Beginning in 1981, Cardinal sent letters to its borrowers, notifying them that the interest rate on their loans was going to be increased. No disclosure statements were furnished to plaintiffs with the letters. The same brochure provided at the loan closings, however, allegedly was mailed with the first notice of increase to each plaintiff.

Given these facts, we now turn to consideration of the cross-motions for partial summary judgment.

■ The narrow question which we must decide is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered only to determine whether there are issues to be tried. 10 Wright & Miller, *Federal Practice and Procedure: Civil* Section 2712 at 379 (1973). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be

drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979) (emphasis original). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently. *Id.,* at 63.

Defendant moves for summary judgment in its favor and against all plaintiffs on the basis that this Court has no subject matter jurisdiction, that Counts I and II of the third amended complaint (complaint) are barred by the applicable statute of limitations and that Count III asserts only a self-evident typographical error.

Defendant's argument with regard to this Court's lack of subject matter jurisdiction is intricately tied to its argument that the statute of limitations has run on plaintiffs' federal claims. Section 130(e) of the TILA provides that any action must be brought "within one year from the date of occurrence of the violation." 15 U.S.C. § 1640(e). Therefore, if the statute of limitations has run on all plaintiffs' federal claims, this Court would have no subject matter jurisdiction. *Rust v. Quality Car Corral, Inc.,* 614 F.2d 1118, 1119 (6th Cir. 1980). Conversely, this Court would have jurisdiction to consider any claims against defendant for Truth-in-Lending violations allegedly occurring within one year of the filing of this action, as well as plaintiffs' pendant state law claim (Count III).

*Count I*

Count I of the complaint alleges that defendant is liable for violations of the Truth-in-Lending Act committed by Cardinal's predecessor in interest, Buckeye Savings Association (Buckeye) when Buckeye entered into loan agreements with plaintiffs in 1977. Defendant argues in its motion that because this action was filed on February 26, 1982, more than one year beyond the occurrence of the alleged violations, Count I is barred by the limitations provision. Plaintiffs respond that Buckeye fraudulently concealed from plaintiffs, at the time they closed their loans, the fact that the interest rate on their loans was variable and subject to modification. Plain-

tiffs allege that the doctrine of fraudulent concealment, therefore, applies so as to toll the running of the statute of limitations. We disagree with plaintiffs, and find that the doctrine of fraudulent concealment does not apply to this case.

The grounds upon which a federal statute of limitations may be tolled are governed by federal standards, and the burden of establishing a factual basis for meeting those standards rests with the plaintiffs. *Lukenas v. Bryce's Mountain Resort, Inc.,* 538 F.2d 594, 597 (4th Cir.1976); *Burke v. Gateway Clipper,* 441 F.2d 946, 948 (3rd Cir.1971); *Davis v. Edgemere Finance Company,* 523 F.Supp. 1121, 1126 (D.Maryland 1981). In order to meet those standards, a plaintiff "must show not only that he exercised due diligence to discover his cause of action prior to the running of the statute, but also that the defendant was guilty of 'some affirmative act of fraudulent concealment [which] frustrated discovery notwithstanding such diligence.'" *Lukenas, supra,* at 597, quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 461 (2d Cir.1974). *See also Charlotte Telecasters, Inc. v. Jefferson Pilot Corp.,* 546 F.2d 570, 574 (4th Cir.1976). The fraudulent concealment doctrine therefore requires more than mere non-disclosure. Otherwise, the one-year statute of limitations would be tolled in almost every Truth-in-Lending action in which a non-disclosure violation was found and the statutory limitations provision would be a nullity. We conclude that Congress did not intend such a result. *See Davis, supra,* at 1126.

In this action, plaintiffs have raised no issue of material fact indicating defendant intentionally or fraudulently concealed from plaintiffs the fact that the interest rate on their loans could be increased or decreased. While we reserve for later discussion the question whether the disclosures made were adequate to comply with the mandate of the Truth-in-Lending Act, there is no question but that substantial disclosures were made. All of the plaintiffs signed loan modification agreements providing for a variable interest rate. The modification agreements set forth all of the

conditions under which plaintiffs' interest rates could be raised. The fact that plaintiffs may not have understood what they were signing is not evidence of fraudulent concealment. Plaintiffs had sufficient information available so that they could with "due diligence" determine that they had signed a variable interest rate agreement and the terms thereof. Further, some of the plaintiffs are pressing a breach of contract claim, arguing that they believed that the interest rate on their loans was to decrease as the cost of money went up. Clearly, these plaintiffs at least understood that the rate on their loans might vary. Taking all allegations of the plaintiffs as true, we can find no support in the facts alleged that could lead this Court to the conclusion that defendant intentionally or fraudulently concealed from the plaintiffs the fact that the interest rate on their loans could vary or the terms thereof. As such, defendant is entitled to summary judgment in its favor on Count I of the complaint. Count I is barred by the statute of limitations and is not tolled by the doctrine of fraudulent concealment. Count I is, therefore, dismissed.

### Count II

Count II of the complaint charges that defendant is liable to plaintiffs for its failure to make TIL disclosure statements at the time defendant notified plaintiffs that the interest rate on plaintiffs' loans was going to be increased.

Defendant's motion for summary judgment on Count II contends that it had no obligation to provide any disclosure statements at the time the interest rates were increased, and that there cannot, therefore, be any liability under the TILA. Plaintiffs filed a cross-motion for summary judgment, arguing that each increase was a "refinancing" of the loan and, therefore, subject to the disclosure requirements of the Act. Because no such disclosures were made, plaintiffs argue that defendant violated the Act.

The parties raise a number of grounds in support of their motions. First, defendant asserts that all disclosures required by the TILA were made at the time plaintiffs' loans were closed. Second, defendant argues that even if the required disclosures were not made, the statute of limitations has long since passed on any action plaintiffs might have against defendant for its failure to make such disclosures. Plaintiffs assert to the contrary that defendant failed to make the required Truth-in-Lending disclosures at the time plaintiffs' loans were executed. Plaintiffs acknowledged the one-year limitation on actions and we have ruled, *supra*, that the statute of limitations was not tolled by any alleged fraud on the part of defendant. Plaintiffs argue further, however, that because the original Truth-in-Lending disclosures were inadequate, each rate increase was a refinancing of the loan and, therefore, subject to the disclosure requirements of the Act. Defendant asserts that the rate increases did not constitute refinancings of the loans, but were made pursuant to the original loan agreements and that no disclosure statements were required.

The Consumer Credit Protection Act, also known as the Truth-in-Lending Act (TILA), was passed in 1968. 15 U.S.C. §§ 1601 *et seq.* Pursuant to § 1604, the Board of Governors of the Federal Reserve Board issued regulations implementing the Act. 12 C.F.R. § 226.1 et seq. (1969) (Regulation Z).

The TILA and Regulation Z have undergone much revision but the basic purpose of the Act always has remained the same: To promote the informed use of credit by consumers and to promote comparative shopping for the various credit terms available. *See Ford Motor Company v. Milhollin,* 444 U.S. 555, 559, 100 S.Ct. 790, 793, 63 L.Ed.2d 22 (1980); 15 U.S.C. § 1601. To this end, the TILA and Regulation Z require that creditors disclose certain information from which the consumer can determine the cost of credit. 15 U.S.C. §§ 1631, 1638; 12 C.F.R. §§ 226.17–226.20 (1982). Section 130 of the Act provides that civil penalties be imposed for a creditor's failure to comply with the disclosure requirements.

Plaintiffs' position is dependent on a finding by this Court that the initial disclosures

made by defendant at the time plaintiffs' loans were consummated in 1977 did not comply with the TILA and Regulation Z. Because some of the plaintiffs' loans were closed prior to the 1977 amendments to the Act and to Regulation Z and some were closed after such amendments, we will analyze separately the disclosures made before and after the 1977 amendment.

■ Prior to October 1977, neither the TILA nor Regulation Z specifically required disclosure of the terms of a variable interest rate. There was in effect, however, Official Board interpretation 226.810 which provided:

> In some cases a note, contract, or other instrument evidencing an obligation provides for prospective changes in the annual percentage rate or otherwise provides for prospective variation in the rate. The question arises as to what disclosures must be made under the circumstances when it is not known at the time of consummation of the transaction whether such change will occur or the date or amount of change.
>
> In such cases, the creditor shall make all disclosures on the basis of the rate in effect at the time of consummation of the transaction and shall also disclose the variable feature.
>
> If disclosure is made prior to the consummation of the transaction that the annual percentage rate is prospectively subject to change, the conditions under which such rate may be changed, and, if applicable, the maximum and minimum limits of such rates stipulated in the note, contract, or other instrument evidencing the obligation, such subsequent change in the annual percentage rate in accordance with the foregoing disclosures is a subsequent occurrence under § 226.6(g) and is not a new transaction.

12 C.F.R. § 226.810 (rescinded October 10, 1977).

There was, therefore, an obligation prior to the 1977 amendment to disclose the terms of a variable interest rate loan. *See Brown v. Marquette Savings & Loan Association,* 686 F.2d 608 (7th Cir.1982). This is

in accord not only with Official Interpretation 226.810, but also with the purpose of the Act which is to provide for disclosure to consumers so they may intelligently shop for credit. Interpretation 226.810 clearly was intended to clarify that the Act required full disclosure of all essential terms, even though not specifically designated, until the Act and Regulations could be amended. Mandatory disclosure of variable interest rate terms was provided in Regulation Z, as amended, in 1977. *See* 12 C.F.R. § 226.8(b)(8) (1977).

We conclude from a review of the documents submitted that the disclosures of the variable interest rate aspect of plaintiffs' loans closed prior to October 1977 were not adequate to comply with the TILA or Official Interpretation 226.810. The disclosure statements prepared by Buckeye stated the annual percentage rate in fixed terms and did not disclose the variable interest rate applicable to the loan. The forms merely provide a statement that the interest rate may be varied in accordance with the modification agreement attached.

The disclosure forms, therefore, do not in any way explain the essential terms of the variable interest rate. They merely direct the borrowers to examine a legal document to gain information about a very essential term of their loans. This is not sufficient to comply with the TILA. 12 C.F.R. § 226.8(a) (rescinded October 1, 1982) required that all creditors make the disclosures required by that section. That section provided further:

> All of the disclosures shall be made together on either:
>
> (1) The note or other instrument evidencing the obligation on the same side of the page and above the place for the customer's signature; or
>
> (2) One side of a separate statement which identifies the transaction.

Defendant relies on the introductory sentence to § 226.8(a) and argues that the requirement that all disclosures be made on one page applies only to "disclosures required by this section" and not to any obli-

gation it might have had under Interpretation 226.810. We conclude, however, that because an obligation to disclose existed, defendant had an obligation to make a meaningful disclosure in accordance with the Act and Regulation Z. *See Brown v. Marquette Savings & Loan Association,* 686 F.2d 608 (7th Cir.1982); *Nash v. First Financial Savings & Loan Association,* 703 F.2d 233 (7th Cir.1983).

Even if defendant was permitted to disclose the variable interest rate on a separate piece of paper, reference to a separate legal document from which the consumer must discern the terms of his loan does not comply with the Act. *See Ljepava v. M.L. S.C. Properties, Inc.,* 511 F.2d 935, 942 (9th Cir.1975). Here, the borrower, on the one hand, is given a very specific statement of the fixed terms of his loan, and then, on the other, is directed to a legal document to discover how those specifics might change at some future date. This arrangement is confusing and misleading and does not adequately explain the conditions and possible cost of the loan. The Act requires meaningful disclosure and we believe that in order to comply, the disclosure regarding the variable interest rate must be at least as specific as the disclosure regarding the fixed rate. This conclusion requires a disclosure statement outlining the terms of the variable interest rate, not just a legal document creating an obligation. Because the disclosure of the variable interest rate was made in a separate document and because the document was not a specific disclosure form as contemplated by the Act, we conclude that defendant did not adequately disclose the terms of the variable interest rate applicable to plaintiffs' loans closed prior to October 1977 (*see* FRB No. 749, doc. 55, Exhibit 3).

In 1977, Regulation Z was amended to require specific disclosure of a variable interest rate feature of a loan. 12 C.F.R. § 226.8(b)(8) (superseded in 1982 by 12 C.F.R. § 226.18(f)). Section 226.8(a) continued the requirement that disclosures required by the Act be made on one sheet of paper, but added the following proviso:

(2) . . . notwithstanding the provisions of paragraphs (a)(1) and (2) of this Section, a creditor may, in any transaction in which the payments scheduled to repay the indebtedness vary, satisfy the requirements of § 226.8(b)(3) with respect to the number, amount, and due dates or periods of payments by disclosing the required information on the reverse of the disclosure statement or on a separate page(s): *Provided,* that the following notice appears with the other required disclosures: "NOTICE: see (reverse side) (accompanying statement) for the schedule of payments.

Section 226.8(b)(8) set forth the specific disclosures required. Section 226.8(b)(8)(iv) required that the creditor provide "a statement of the estimated increase in the number of periodic payments caused by a hypothetical immediate increase of one quarter of one percentage point, based upon the periodic payment amount and the original amount financed disclosed at consummation."

After the 1977 amendments, defendant continued to use the same disclosure form with reference to the loan modification agreement for the terms of the variable interest rate. Defendant also used an "Addendum" in an attempt to comply with § 226.8(b)(8)(iv), *supra.* The Addendum was a separate sheet of paper providing a hypothetical example of a one-quarter of one percent increase in the interest rate of the loan.

We conclude that the disclosures regarding the variable interest rate made by defendant subsequent to October 1977 also did not comply with the Act or Regulation Z for a number of reasons. First, there is no question but that disclosure of the variable interest was required after October 1977, and, for the same reasons stated above, we find the disclosures made by defendant to be inadequate. Further, there is no question but that the variable interest rate disclosures are governed by the one page rule of § 226.8(a)(1) and (2). Defendant argues that the exception to § 226.8(a)(2), *supra,* applies and permits the disclosures to be

made on a separate sheet of paper. We disagree for the following reasons:

First, the exception to the one page rule only applied "with respect to the number, amount, and due dates or periods of payment" required by § 226.8(b)(3). It did not authorize disclosure on a separate piece of paper of the information required by § 226.8(b)(8). Section 226.8(b)(8) specifically applies to variable interest rate loans and requires disclosure of substantial information in addition to the schedule of payments information required by § 226.8(b)(3). At most, therefore, § 226.8(b)(3) allowed separate disclosure of the schedule of payments.

Second, even if the exception did apply, defendant did not comply with the precise language of the proviso of § 226.8(a)(2). Strict compliance with the Act is required, and we find that defendant's reference to the loan modification agreement as opposed to the specific Notice Language stated in that section did not comply. *See Smith v. Galesburg Crown Finance Corp.,* 615 F.2d 407, 416 (7th Cir.1980); *Pearson v. Easy Living, Inc.,* 534 F.Supp. 884, 890 (S.D.Ohio, 1981) (Hogan, J.).

In addition to the above, a question of fact exists whether plaintiffs were given copies of the disclosure statements prepared by defendant. If plaintiffs can prove that they were not provided copies, this would be an additional violation of the Act that occurred at the time the loans were consummated. *See* 12 C.F.R. § 226.8(a).

■ The primary question remaining is whether, in light of the fact that the original disclosures were inadequate, subsequent rate increases constituted refinancings of the loans so that the disclosure requirements of the Act were triggered at that point in time. After careful examination of the Act, Regulation Z, and all authorities cited by the parties, we conclude that refinancings of all the loans did occur, and that defendant, therefore, had an obligation to provide disclosure statements at the time of such refinancings. 12 C.F.R. § 226.8(j) (rescinded October 1, 1982); 12 C.F.R. § 226.-20(a) (1982).

With regard to the loans that were consummated prior to the 1977 amendments, § 226.8(j), in effect at the time, provided:

If any existing extension of credit is refinanced, or two or more existing extensions of credit are consolidated, *or an existing obligation is increased, such transaction shall be considered a new transaction subject to the disclosure requirements of this part* (emphasis added).

12 C.F.R. § 226.8(j) (rescinded 1982). Thus, disclosure statements clearly were required anytime a new transaction, as defined by section 226.8(j), was entered into.

Official Board Interpretation § 226.810, *supra,* was the only authority in effect at the time which instructed credit institutions as to the disclosures required when a mortgage or note provided for a variable interest rate. Even though the Official Interpretation was superseded by amendments to Regulation Z, it controls in this instance because the amendments apply only to transactions that were consummated after the amendments took place. *Nash v. First Financial Savings & Loan Association,* 703 F.2d 233 at 236 (7th Cir.1983); *Brown v. Marquette Savings & Loan Association,* 686 F.2d 608, 611 (7th Cir.1982).

■ In *Brown,* the Court recognized that the Federal Reserve Board consistently had relied on Official Interpretation 226.810 as establishing the rule that any rate increase pursuant to a variable rate provision constituted a refinancing and, thus, a new transaction under § 226.8(j) unless there had been compliance with the conditions of § 226.810(c). 686 F.2d at 611. In further support of its position, the Court reasoned that acceptance of interest rate increases by borrowers was not a certainty especially when, as in the instant case, the borrower's had the right to pay off the loan without penalty after notice of the increase was given. Further, increases in the interest rate "dramatically alters the borrower's financing obligation." *Id.,* at 612. The Court recognized that consumers were likely to shop for credit under the circumstances and that "considering such increases as

refinancing or new extension of credit comports with the purpose of the TILA." *Id.*

The Seventh Circuit reaffirmed its position in *Nash, supra,* and clarified its position that it considers an interest rate increase to be a bilateral transaction if the loan was closed prior to the 1977 Amendments to Regulation Z and the creditor did not comply with Official Interpretation 226.810(c). Because the loan agreement in *Nash,* as in the instant case, provided for a period of time after notice of the increase in which the borrower could pay off the loan without penalty, the Court concluded that this was, in effect, a "credit shopping" period. 703 F.2d at 239. The Court reasoned that unless the increase in interest rate was considered a bilateral transaction, the notice and penalty free repayment provisions would be meaningless. *Id.*

Both *Brown* and *Nash* concerned loans that were closed prior to the 1977 Amendments. We agree with the analysis of the Seventh Circuit in these cases and believe it supports a similar finding with respect to loans consummated after the 1977 amendments to Regulation Z. Section 226.8(b)(8) of Regulation Z, as amended in 1977, specifically required disclosure of the relevant terms of a variable interest rate loan and concluded with language similar to Official Interpretation 226.810 that "[a]ny increase in the annual percentage rate within the conditions or limitations disclosed in accordance with this paragraph is a subsequent occurrence under § 226.6(g) and is not a refinancing under § 226.8(j)." 12 C.F.R. § 226.8(b)(8)(iv) (rescinded April 1, 1982). This provision of Regulation Z regulates all of the plaintiffs' loans that were consummated after the 1977 amendment for the same reasons stated above. We find that it clarifies defendant's obligation to make full disclosure of the variable interest rate at the time interest rates are increased unless the provisions of § 226.8(b)(8) were complied with at the time the loan was consummated.

The evolution of Regulation Z and the Official Staff Interpretations strongly support plaintiffs' position. Beginning with Official Interpretation 226.810, the Federal Reserve Board consistently interpreted the Act to require disclosures at the time of an interest rate increase if adequate disclosures were not made at the time the loan was consummated. *See Brown v. Marquette Savings & Loan Association,* 686 F.2d at 611; *see also* Public Information Letters (doc. 55, Exhibits 2–9). The official staff commentary to current Regulation Z, § 226.20(a) states:

> If the variable rate feature was not previously disclosed [in accordance with the regulation], a later change in the rate results in a new transaction subject to new disclosures.

Board interpretations and opinions are entitled to great deference and are dispositive unless they are "demonstrably irrational." *Ford Motor Company v. Milhollin,* 444 U.S. 555, 556, 100 S.Ct. 790, 792, 63 L.Ed.2d 22 (1980). We conclude that such interpretations are not irrational and are in full accordance with the law.

Defendant asserts that revised Regulation Z, § 226.20(a) controls our decision. That provision, inserted in the 1982 amendments, states that "[a] refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer." 12 C.F.R. § 226.20(a). Defendant argues that because this is the first clear definition of refinancing found in Regulation Z, it should be applied retrospectively to control the meaning of refinancing in the earlier versions. This argument, however, does not defeat our resolution of the issues. First, we have concluded that the interest rate increases were bilateral transactions and that plaintiff essentially did agree to a new credit arrangement. Second, the Official Staff Commentary clearly indicates that § 226.20(a) was not intended to change the requirement that disclosures be made at the time interest rates are increased per a variable interest rate loan if full disclosure of the variable interest rate was not made at the time the loan was consummated. Third, § 226.20(a) was not in effect at the time plaintiffs'

loans were made and does not, therefore, control disposition of this case. *See Brown,* 686 F.2d at 611.

*Count III*

Plaintiffs and defendant also filed cross-motions for summary judgment on Count III of the complaint which is a state law claim against defendant for breach of contract. The claim is based upon language found in some of the loan modification agreements signed by the plaintiffs. Plaintiffs whose loan modification agreements contain this language have been designated a sub-class. The language in question states that the interest rate on the loans shall be decreased as the cost of money to the defendant increases. Plaintiffs charge that because defendant has increased interest rates as the cost of money increases, they are entitled to summary judgment in their favor. Defendant contends that this language is nothing more than a self-evident typographical error, and that it is entitled to judgment in its favor as a matter of law. Defendant also has filed a counterclaim for reformation of the contract. Because this claim arises under state law and is, therefore, before this Court by way of pendant jurisdiction, the law of Ohio must be applied.

We cannot agree with plaintiffs that this language is clear and unambiguous and that they are entitled to summary judgment as a matter of law. Where there has been an error or mistake in reducing an agreement to writing, the contract may be reformed to reflect the actual agreement between the parties. *Ohio Farmer's Insurance Company v. Clinton County National Bank,* 8 Ohio Misc. 226, 220 N.E.2d 381, 37 Ohio Op.2d 206 (c.p. 1964); *Parklawn Manor v. Jennings-Lawrence Company,* 119 Ohio Appeals 151, 197 N.E.2d 390, 26 Ohio Op.2d 341 (1962); *Greenfield v. Aetna Casualty & Surety Company,* 75 Ohio Appeals 122, 61 N.E.2d 226, 30 Ohio Op. 427 (1944); *Clayton v. Freet,* 10 Ohio St. 545 (1860); 37 O.Jur.2d, *Mistake, Accident, or Surprise* §§ 11, 12. We agree with defendant that the language referred to clearly was a typographical error and did not accurately reflect defendant's understanding of the agreement. It also appears to be a mutual mistake, as the language is inconsistent with the remainder of that provision and with all of the other information provided to the plaintiffs. It is also inconsistent with reasonable banking practice. We conclude that a reasonable person reading all of the information provided would not understand that defendant had agreed to decrease interest rates as the cost of money increased and would realize that a mistake had been made. We also conclude that a person could sign the loan modification agreement without reading it carefully enough to see the mistake and believe, as did defendant, that it accurately reflected the agreement between the parties.

Some of the named plaintiffs assert, however, that they did not understand that the interest rates on their loans could be varied and that there was, therefore, no meeting of minds on the original agreement. In response, defendant asserts that all the plaintiffs signed a paper acknowledging receipt of a brochure explaining the variable interest rate feature of their loans. Further, the loan modification agreements signed by the plaintiffs clearly explained that their loans were subject to a variable interest rate. Every person is obliged to read a contract before signing it and, in the absence of fraud or mistake, or some other reason requiring equitable relief, is held to the terms of the agreement signed. *Independent Directory Corp. v. Vandenbrock,* 94 N.E.2d 228, 43 Ohio Op. 229 (Appeals 1950), *rehearing denied,* 94 N.E.2d 529, 43 Ohio Op. 232 (Appeals 1950); *McAdams v. McAdams,* 80 Ohio St. 232, 88 N.E. 542 (1909); 17 O.Jur.3d, *Contracts* § 18. Further, if the parties have signed a written agreement, it is presumed that their minds have met and a contract made, even if one of the parties failed to read the agreement. *Parklawn Manor, supra,* 197 N.E.2d 390, 26 Ohio Op.2d at 344.

Plaintiffs, however, have the right to rebut this presumption with proof that the meeting of the minds was on different terms. *Id.* Two of the named plain-

tiffs have submitted sworn testimony that they inquired about this language and were explicitly told that the interest rate on their loan would be decreased as the cost of money increased. This raises a question of material fact whether defendant actually made such an agreement with the Crains or with any other of the plaintiffs. Such a question must be determined by the trier of fact at trial. Our ruling, however, does not necessitate de-certification of the class or sub-class. As we stated in our Order certifying this case as a class action, the fact that individual factual issues exist does not prevent class action treatment. Individual issues may be addressed subsequent to our resolution of the issues common to all class members (doc. 64).

Plaintiffs also assert that defendant has breached the contract by increasing interest rates as the cost of money increases. Plaintiffs allege that, as to the sub-class, there is no authority in the contract for defendant to so increase the interest rates. This relates to the question whether the contracts containing the language in question ought to be reformed. If such contracts are reformed, they would read to permit such an increase. However, we cannot rule that these contracts should be reformed without resolution of material factual questions and reserve our ruling on this issue until after trial on the merits.

One further issue is the question of plaintiff Hughes' standing to bring this action. Defendant argues that Hughes was not a "consumer" under the Act at the time defendant increased the interest rate on his loan, and that he, therefore, had no standing. Defendant asserts that the filing of the action, therefore, was a "jurisdictional nullity" and should be dismissed as to all plaintiffs.

The TILA disclosure requirements apply only to loans "primarily for personal, family, household, or agricultural purposes ..." 15 U.S.C. § 1602(h). The Act specifically exempts "credit transactions involving extensions of credit for business or commercial purposes." 15 U.S.C. § 1603. Regulation Z, 12 C.F.R. § 226.3 (1982) provides that the Act and Regulations apply only to property that is "owner-occupied."

The record before the Court shows that in 1977 plaintiff Ralph Hughes bought his home and financed it with a loan from Buckeye Savings Association. Plaintiff Hughes lived in his home until June 1981, when he got married and moved to his wife's home. He received his first notice that the interest rate on his loan was going to be increased in August, 1981. During this period of time and until September 1982, Ralph Hughes' son lived in the house and plaintiff continued to maintain the property and store his belongings there. During this time, plaintiff Hughes also occasionally rented out the upstairs to help pay the mortgage, but only to persons he considered family, until sometime in 1982. The portion of the house in which he and his son lived was not rented until February 1982. Plaintiff Hughes stated in an affidavit that he and his wife had always intended to move back to his home as soon as his wife's daughter finished high school.

We conclude from the above that plaintiff Hughes was a consumer borrower in August 1981 and entitled to the protection of the TILA. The facts before the Court indicate that plaintiff Hughes owns the home "primarily for personal, family, [or] household ... purposes." *See Tower v. Moss,* 625 F.2d 1161, 1166–67 (5th Cir.1980); *Gerasta v. Hybernia National Bank,* 411 F.Supp. 176, 181–82, 185 (E.D.La.1976). Further, we conclude that the only reasonable interpretation of the term "owner-occupied" is that it includes the person who pays the mortgage, as well as his immediate family. Plaintiff Hughes therefore had standing to file this action.

For the reasons stated herein, it is hereby ordered that defendant's motion for summary judgment on Count I is granted; plaintiffs' motion for summary judgment on Count II is granted, and defendant's motion for summary judgment on Count II is denied. Plaintiffs' motion for summary judgment on Count III is denied, and de-

fendant's motion for summary judgment on Count III is denied.

SO ORDERED.