PENCE, Appellant,

v.

**GENERAL DYNAMICS LAND SYSTEMS DIVISION, Appellee.**

[Cite as *Pence v. Gen. Dynamics Land Sys. Div.* (1991), 75 Ohio App.3d 660.]

Court of Appeals of Ohio,
Allen County.

No. 1–90–93.

Decided Aug. 21, 1991.

*Paul E. Howell,* for appellant.

*Frank Cory,* for appellee.

---

THOMAS F. BRYANT, Presiding Judge.

This is an appeal by plaintiff-appellant, Norman Pence (hereinafter "Pence"), from a judgment of the Court of Common Pleas of Allen County entered on September 19, 1990, granting motions for directed verdicts in favor of defendant-appellee, General Dynamics Land Systems Division ("General Dynamics"), and dismissing the cause of action.

Pence, aged fifty-five at the time of complaint, was employed by General Dynamics from November 17, 1979 until January 15, 1988, in both union and management positions. On January 4, 1988, he was informed that he had been placed on indefinite layoff due to a reduction in force at this division of General Dynamics. There is evidence that other employees under age forty, with lesser experience and in similar positions, were subject to the same layoff but were retained in other positions. To date, Pence has never been recalled by General Dynamics.

On February 9, 1989, Pence filed suit pursuant to R.C. 4101.17 challenging his layoff, alleging he was discharged as a result of unlawful age discrimina-

tion as well as breach of an implied employment contract. In his complaint, Pence demanded compensatory and punitive damages but the trial court granted General Dynamic's motion *in limine*, ruling that evidence to prove compensatory and punitive damages would not be admitted. At trial, the court granted General Dynamics' motions for directed verdicts on both the issue of age discrimination and that of breach of an implied employment contract thus dismissing the complaint. It is from this judgment that Pence now asserts three assignments of error.

■ Appellant's first assignment of error is:

"I. The trial court erred in granting appellee's motion for a directed verdict in favor of appellee on the appellant's claim of age discrimination under Section 4101.17 of the Ohio Revised Code."

R.C. 4101.17 states, in pertinent part, as follows:

"(A) No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.

"(B) Any person aged forty or older who is discriminated against in any job opening or discharged without just cause by an employer in violation of division (A) of this section may institute a civil action against the employer in a court of competent jurisdiction. * * * "

In *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, paragraph one of the syllabus, the court stated:

"In order to establish a prima facie case of age discrimination, violative of R.C. 4101.17, in an employment discharge action, plaintiff-employee must demonstrate (1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class."

In addition, Civ.R. 50(A)(4) states:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

To overcome a motion for directed verdict Pence must have introduced at trial some evidence tending to prove each element of the four prong test

identified in *Barker.* *Id.* The trial court was required to construe that evidence most strongly in Pence's favor to determine if reasonable minds could differ about the conclusions to be reached upon the evidence, or whether such could not be interpreted to prove one or more of those four elements. The record discloses that Pence offered evidence tending to establish a prima facie case of age discrimination under R.C. 4101.17. Therefore, the motion for directed verdict was improperly granted.

Pence, aged fifty-four at the time of the layoff, was within the statutorily protected class and thus meets the first aspect of the *Barker* test.

Appellee argues that a reduction in force is not a discharge within the meaning of R.C. 4101.17. The trial court, finding no evidence of discharge, apparently agreed. We do not.

Discharge, in the statutory sense of R.C. 4101.17, includes a reduction in force. Such is permitted for "just cause" so long as the reduction or layoff is not a pretense by the employer to implement an unlawfully discriminatory purpose.

Here, Pence has alleged the reason for his layoff or discharge was unlawful discrimination. We hold that where an unlawful discriminatory purpose is the reason for a reduction in force layoff, that layoff is a discharge for the purposes of R.C. 4101.17.

Semantics aside, the evidence presented, if believed by the jury, would support a finding of Pence's discharge from General Dynamics on January 15, 1988. He was given no options for transfer to a lateral or an inferior position, his layoff was indefinite due to the reduction in force, and he was not encouraged to believe that he would ever again be employed in any position by General Dynamics.

In his case-in-chief, Pence offered evidence that he is qualified to perform the duties of a job available at the time of his layoff which, if believed, was sufficient to establish the third element of a prima facie case within the rule of *Barker.*

For example, the testimony of a co-worker offered by Pence is as follows:

"Q. Did you know a woman by the name of Sheila Keller?"

"A. Yes."

"Q. Do you know what job she was performing?"

"A. Yes.

"Q. And was that basically the same job that Mr. Pence was doing?

"A. Yes, it was.

"Q. So, as far as the actual job duties in the Quality Audit, you are obviously still working for the company; right?

"A. Yes.

"Q. And you still perform the Audit function?

"A. No, I'm no longer in the Audit group.

"Q. When did you leave that group?

"A. January of 1990.

"Q. All right. After the layoff in January of 1988 do you know what job Sheila Keller was performing?

"A. I don't know the specific area or anything, but she continued in the Audit function.

"Q. And that's the same job that Mr. Pence had; right?

"A. Yes.

"Q. So, that's a job that Mr. Pence could have performed as well?

"A. Yes."

There is testimony that Pence helped train for the job the person that was retained. Also, Pence testified concerning his qualifications to perform a specific job available at layoff, as follows:

"Q. Norman, you said that you remember Sheila Keller, a particular woman in your department that was retained at the layoff. Do you know what job she was retained in?

"A. As a Quality Auditor.

"Q. And was that similar to the job that you had been doing before?

"A. Yes, sir.

"Q. Could you have performed that job?

"A. Yes, sir.

"Q. Even after January of 1988?

"A. Yes, sir."

Lastly, the fourth prong of the *Barker* test was met by evidence that General Dynamics retained an individual expressly in the complaint alleged to be not among the statutorily protected class.

In passing, we note from the record that the trial court expressed concern about the issues presented in the determination of Pence's statutorily protected class because the younger employee retained was a female. Though gender discrimination is unlawful and will not be permitted, under R.C. 4107.17 gender alone is irrelevant.

In light of the foregoing analysis, fact issues remain for jury determination. The motion for directed verdict on the plaintiff's R.C. 4101.17 claim should have been overruled.

Appellant's first assignment of error is well taken and sustained.

Appellant's second assignment of error is:

"II. The trial court erred in granting appellee's motion for a directed verdict in favor of appellee on the appellant's claim of breach of implied contract."

■ Pence contends that at the close of all evidence, the trial court prejudicially erred by directing a verdict in favor of General Dynamics upon a finding that Pence introduced no evidence tending to prove breach of an implied employment contract.

Pence freely concedes he had no express contract for employment with General Dynamics but relies upon an implied contract said to have arisen because of his reliance on layoff procedures announced in a work manual supplied by General Dynamics.

In *Cohen & Co. v. Messina* (1985), 24 Ohio App.3d 22, 24 OBR 44, 492 N.E.2d 867, the court had an opportunity to examine a case in which it was claimed that an employees' personnel manual gave rise to an implied employment contract.

The court stated, "[s]uch manuals may be important in establishing the terms and conditions of employment. * * * However, in order for such manuals to be considered valid contracts, there must be a 'meeting of the minds.'" *Cohen* at 24, 24 OBR at 46, 492 N.E.2d at 870 (quoting *Parklawn Manor, Inc. v. Jennings–Lawrence Co.* [1962], 119 Ohio App. 151, 156, 26 O.O.2d 341, 344, 197 N.E.2d 390, 394).

Further, the *Cohen* court stated, "[t]his court has previously held that an employee handbook is merely a unilateral statement of company rules and regulations, and does not constitute an employment agreement." *Cohen*, at 24, 24 OBR at 46, 492 N.E.2d at 870.

However, in *King v. Hosp. Care Corp.* (May 13, 1986), Allen App. No. 1–85–1, unreported, 1986 WL 5910, this court stated that if certain procedures for discharge were enumerated in an employee handbook they "can be reasonably interpreted to guarantee a sort of corporate due process prior to discharge except in the specifically itemized situations where the company reserves a right to immediate termination."

Pence concedes there was no meeting of the minds between him and General Dynamics on the layoff-procedure issue and, therefore, we might well follow the restrictive rule of *Cohen*. However, based upon the record we

need not resolve any distinction that may be made between *Cohen* and our own holding in *King*, because we believe the trial court properly granted, for evidentiary reasons, General Dynamics' motion for directed verdict pursuant to Civ.R. 50.

Even assuming *arguendo* that an employee manual given unilaterally by an employer to an employee may give rise to an implied employment contract and that certain specified procedural safeguards are thus inherent, no evidence offered by Pence tends to prove that the manual procedures were not followed in the case at bar.

The procedure specified by General Dynamics' most recent manual, applicable here, requires that a "functional representative gathers all relevant information as to the need for the reduction, candidates, timing and proposed disposition and provides it to the local Human Resources Manager or designated representative."

The relevant information includes a list of criteria, including corporate service and peer ranking. When gathered such is to be submitted to the human resource manager. This was done as shown by unrebutted testimony in the record.

Appellant's second assignment of error is not well taken and is overruled.

■ Appellant's third assignment of error is:

"III. The trial court erred in granting appellee's motion *in limine* and thereby excluding the introduction of evidence relating to punitive damages or compensatory damages in the nature of pain and suffering, emotional distress, and related tort-like remedies."

The Supreme Court has decided the issue, stating in *Hoops v. United Tel. Co. of Ohio* (1990), 50 Ohio St.3d 97, 553 N.E.2d 252:

"Current language of R.C. 4101.17 was a conscious response by the General Assembly to this court's interpretation of the statute as originally enacted. In *Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 75 O.O.2d 291, 348 N.E.2d 144, this court held as syllabus law: 'Violation of the provisions of R.C. 4101.17 by an employer does not give rise to a civil action for damages.' In response, the General Assembly enacted R.C. 4101.17(B) * * *. The General Assembly is presumed to have known that its designation of a remedy would be construed to exclude other remedies, consistent with the statutory construction maxim of expressio unius est exclusio alterius. Also, it may be reasonably presumed that if the General Assembly had intended to confer the right to compensatory and punitive damages, it could have expressly so provided. However, when enacting and then amending R.C. 4101.17, the

General Assembly declined both to include the remedy of compensatory or punitive damages * * *."

■ Therefore, it is clear that R.C. 4101.17 does not give rise to a claim for compensatory or punitive damages against an offending employer and that the remedies available under section (B) are the exclusive remedy available to a victim of age discrimination in employment.

Appellant's third assignment of error is not well taken and overruled.

Accordingly, appellant's first assignment of error is sustained and his second and third assignments of error are overruled.

Having found error of the trial court prejudicial to appellant in directing a verdict for defendant–appellee upon plaintiff–appellant's claim of discriminatory discharge pursuant to R.C. 4101.17, the judgment of the Court of Common Pleas of Allen County is reversed in part and affirmed in part and this cause is remanded to that court for further proceedings.

*Judgment affirmed in part, reversed in part and cause remanded.*

HADLEY and SHAW, JJ., concur.